### RAYNOR and others *vs.* TIMERSON.

51 517
71h 332

R. and T. being adjoining owners of land, T. called upon R. in reference to building a line fence. R. being a cripple, unable to leave his house, and not knowing where the boundary line between them was, sent T. to B. to have the latter point out the line, saying that B. knew where the ltne was. B. accordingly pointed out the line to T. who built a fence there, and from year to year improved his land up to the fence. The evidence showed that R. never knew where the line had been pointed out or located, nor what T. had done in the way of fencing and improving the land. It turned out that B. did not know where the line in fact was, and pointed out the wrong line. *Held* that upon these facts the elements necessary to create an *estoppel in pais* were entirely wanting.

*Held, also,* that T. was as much bound as R. to know where the true line was, between the two lots, and that B. was as much the agent of T. as of R.

*Held, further,* that as it did not appear from the case that there was any difficulty in ascertaining the true line, by survey and measurement, it was not a case where the line was uncertain, and difficult to discover, but a case where T. instead of taking any steps to ascertain, chose to take the word of B. and thus, by the mistake of the latter, an errroneous line was located and the division fence built upon it.

That R. not knowing where the location was made, nor that T. was making improvements upon the land on his side of the line fence, he was not called upon to speak, or to give notice; and his silence, under the circumstances, implied no acquiescence in T.'s proceedings, and no wrong.

There is no case to be found where an erroneous boundary line, established under such circumstances, has been held binding and conclusive on the ground of estoppel *in pais,* short of twenty years' possession under claim of title. *Per* JOHNSON, J.

The mere circumstance that one has made improvements upon the land of another, under an honest, but erroneous belief that he was the owner, forms no ground for transferring the title of one person to another; nor for estopping the owner from reclaiming his own. *Per* JOHNSON, J.

Possession and claim of title under an erroneous location, short of twenty years, is not sufficient to establish title in the occupant, as against a valid paper title; unless such location was made, and the possession under it has been continued, under such circumstances as to estop the party having the paper title from asserting his claim against such occupant.

An exception to a single word, in a sentence of the judge's charge, which has no bearing upon any issue, or question in the case, will not be allowed or entertained.

THIS is an action of ejectment brought by the plaintiffs, as heirs at law of John M. Raynor, deceased, to recover six acres of land from the defendant.

The parties derive title from the same source, viz. Baltus Lingenfelter. The plaintiffs' title begins in 1824, and the defendant's in 1829. The plaintiffs derive title through Aaron Putnam; the defendant through Oliver Blanchard. Putnam's deed calls for twenty-four chains fifty-nine links length of line east and west. The defendant's and Blanchard's deed laps on the plaintiffs' line so as to leave them but nineteen chains and ninety-one links. A line fence was built between them at the point called for in Blanchard's deed, by Blanchard, and remained there twenty-five years, as the line. In 1853 the defendant took the title and entered into possession of the premises occupied by Blanchard, and without any survey being made. This line fence, as built by Blanchard, was then there. Raynor, the second year after the defendant purchased, wanted the latter to unite with him in building a new line fence, because the old one was insufficient to turn cattle, and asked him to send for Almar Blanchard for him to mark out the line to build the new fence on, for he (Blanchard) knew where the line was. Blanchard came and pointed out the line. Raynor had his son and Coalman, his hired man, present. The fence was built by Raynor and Timerson on the line pointed out by Blanchard, and after it was built, it was divided by them. At the time this fence was built, it was a swamp on both sides, and after the fence was built the defendant cleared up his land to this fence, and made great improvements; he cleared and ditched the swamp. Two years after this fence was built, and in 1857, Raynor sold and conveyed to Timerson nine acres immediately west of this line fence. Raynor in his deed describes these nine acres as follows: "Beginning at the northeast corner of lands owned by party of the first part, (Raynor,) *and by the line fence*, &c. These nine acres were ran out by a surveyor, who commenced at this line fence, and the surveyor reported the survey to Raynor. A line fence was then built on the west line of these nine acres

Raynor v. Timerson.

by Raynor and Timerson, and the fence first built by Raynor and Timerson was removed.    Timerson then went on and made valuable and permanent improvements on these nine acres, ditching, clearing, &c.    Timerson never heard or knew of there being any dispute about the line till after Raynor's death, which was August, 1863.    The jury found a verdict for the plaintiffs, for the land lying east of the line fence built in 1855 by Raynor and Timerson, running six chains and seventy-six links east, &c. and located the nine acres according to the deed, starting from this line fence west.

The judge thereupon ordered the exceptions to be heard in the first instance at the general term, and all proceedings on the verdict to be stayed.

*D. Wright,* for the plaintiffs.    I.  The paper title is in the plaintiffs.    That fact is not disputed.

II.  Putnam was in possession when Blanchard received his deed, and although Blanchard's deed was first recorded, Putnam's possession was notice of whatever rights he had under his deed.    (*See authorities cited on 6th point.*)

III.  The deed from Lingenfelter to Blanchard, is pretended to have been made after an actual survey, and yet it makes the north line of the sub. 36.50 chs. whereas Lake, the defendant's surveyor for this trial, makes the south line but 34.18 chs. and the angles are all right angles. Blanchard's east line is made 38.50, when no surveyor has ever found more than 36.50 chs.    In running upon Putnam's land, the first line is north 11.10 chs.    Lake and all the other surveyors, make this line but 10 chs.; the next line is made west 14.10 chs. and the next, running west, is made 5.80 chs. making for the two westings 19.91 chs. whereas Lake makes the two 17.83 chs.; nor are the eastings any more nearly correct, as shown by all the surveyors.    From all this it is possible that the jury came to the conclusion that all the testimony of Oliver Blanchard and

of Benjamin Blanchard, in regard to an actual survey, was fallacious, as it doubtless was, and that may have had some influence upon their minds in regard to other matters testified to by these two witnesses. It was at least sufficient to compel the jury to disregard the calls of that deed, and the defendant has no other under which he could claim title for twenty years.

IV. The questions between these parties, being strictly questions of fact, unless some error has been committed by the court, the verdict is conclusive.

V. The first exception taken was "to that part of the charge wherein his honor charged, with regard to the recording of the deed and its legal effect." This was unaccompanied by any request to charge. The charge given upon that subject was correct. (*Tuttle* v. *Jackson*, 6 *Wend.* 213. 4 *Kent's Com.* 179.)

VI. The next exception is to that part of the charge wherein the court charged "that the possession to be adverse must be peaceable." The defendant's counsel seizes upon this one word "peaceable," upon which to hang an exception. The exception must fail for the following reasons: 1st. There was no request to charge differently. (*Carpenter* v. *Stilwell*, 11 *N. Y. Rep.* 79.) 2d. The whole charge taken together was entirely correct. 3d. Whether the word "*peaceable*" be in or out of the charge, could not possibly affect the defendant. The possession of the defendant was eminently "peaceable," so far as it extended; nor is there one word in the testimony to the contrary; and hence the defendant could not have been injured by the error if one had been committed. For what constitutes an adverse possession, see *Lane* v. *Gould*, (10 *Barb.* 256,) and compare the charge as given upon this subject, upon the trial of this cause with what is there said upon the same subject, and it will readily be seen that the defendant had no reason to complain.

VII. The next exception is to that part of the charge

wherein the court instructed the jury that, "If the location made by Almar Blanchard was erroneous, and Raynor was ignorant that the mistake had been made by Blanchard, and was ignorant of the subsequent improvements by Timerson, then the plaintiffs' title is not cut off, and they are not now estopped." In lieu of this the defendant asked the court to charge the jury that, " If they find that Almar Blanchard was the agent of Raynor to locate the line, and did so locate it, and the defendant and the plaintiff *each* acted upon it, and the defendant made improvements in consequence of it, then the plaintiff is estopped." Such never was a *legal* principle, and there is no equitable defense set up in this case. It has been held in equity, that where the person having the legal title stands by and sees the party in possession honestly making permanent improvements upon the land, and neglects to speak, he shall ever after hold his tongue ; unless he will first make compensation for the improvements thus made. But I submit that it never has been held that the party thereby lost his legal title by estoppel. The defendant also requested the court to charge, " that if the line agreed upon and fenced by Raynor through an agent, and the defendant agreeing to it, and making permanent improvements upon the land up to the fence, then the plaintiff, after the lapse of a number of years, is estopped from interfering with that line, whether he knows of the improvements being made there or not." It is difficult to understand how the making of improvements by the defendant, could form an element in causing an estoppel on the part of the plaintiff, while he was ignorant upon the subject. There are two sufficient answers to this exception. 1st. The charge as made, was altogether wrong as against the plaintiffs, and much too favorable to the defendant. The title to real estate cannot be thus conveyed. If a line can thus be established by parol, the length of time, short of twenty years, is not an element in *any degree*, constituting the

estoppel. If there be any estoppel, it is by virtue of an *executed* agreement, and that doctrine I deny in toto, when offered as a *legal* defense. There may be cases wherein equity would interpose between owners of adjoining lands. The true rule upon this subject is laid down in *Terry* v. *Chandler*, (16 *N. Y. Rep.* 354,) and in the opinion of Porter, J. in the case of *Vosburgh* v. *Teator*, (32 *id.* 566.) The true rule is this: Where the true place of the boundary line is in dispute, and *cannot* be ascertained from the *deeds*, then a parol agreement fixing the location of the line, if *executed*, is good by way of estoppel. But where the true location can be certainly ascertained from the calls in the deed, then there can be no dispute to be thus settled, and the calls of the deed must govern. This doctrine as applied to this case upsets the whole of this part of the charge upon this subject, as against the plaintiffs. For the location of the west line of the lot was well known, was a fact undisputed. The plaintiffs were entitled to run 24.59 chs. east from this west line; nobody disputes that; no one ever has disputed that; and as the place where that would reach, could be ascertained simply by measuring that distance from an ascertained and undisputed starting point, that end of that line was legally just as certain as the other, and hence there was no dispute to be settled by parol agreement. And this rule was clearly enunciated by the Court of Appeals in the case of *Terry* v. *Chandler*, (16 *N. Y. Rep.* 358,) citing *Clark* v. *Withey*, wherein it was held that nothing short of an adverse possession for a length of time sufficient to bar an entry would be effectual to establish a line *different from that given in the deed;* with this qualification, that when the monuments mentioned in the deed can no longer be found, the acts or agreements of the parties may be resorted to as secondary evidence to supply the hiatus created by the hiatus of the monuments. So in *Clark* v. *Baird*, (5 *Seld.* 183,) it was also held that parol declarations and agreements, intended to establish a line

Raynor *v.* Timerson.

different from that given in the deed," would, if effectual, amount to either a conveyance of lands by parol, in case the declarations and agreements intended to establish a line different from that given in the deed, or else, if they were prior to, or cotemporary with its delivery, such declarations of the intended effect of the language of the deed, if effectual, would violate the rule which forbids parol evidence to alter a written contract." The learned judge who delivered the opinion says, in conclusion, that upon principle, where the description in the deed designates a piece of land as that conveyed, the description cannot be departed from by parol evidence of intent or of acquiescence in another boundary, unless such an adverse possession be shown, as is in itself a bar to an ejectment." (*See also Reed* v. *Farr*, 35 *N. Y. Rep.* 116.) The necessity of this restriction upon the rule is well exemplified in the present action. John M. Raynor was a cripple, unable to get to the line; he said Almar Blanchard knew where the lines were, and he would point them out. Supposing he had done so correctly, and never knowing to the contrary, the fence was built upon the line pointed out by Blanchard, and although the calls in the deed showed conclusively, and beyond any dispute, that this line as thus pointed out by Blanchard, was but 17.83 chs. east of the west line of the lot instead of 24.59, as called for by the deed, yet the court was asked to, and did in effect, charge the jury that Mr. Raynor thus lost, *practically conveyed to Timerson*, 6 76-100 acres of land, and that he was estopped from alleging to the contrary, because both parties improved their lands upon each side of this preposterous and mistaken line only from 1857. I submit that such has never yet been the law of this state, and further that if it shall ever become the law, the statute, requiring a writing to convey title to real estate will become worse than a dead letter; it will become a snare to be evaded by the parol evidence of any one who will testify that a former

owner, now dead, authorized him to show the line to an adjoining owner. 2d. The charge, as it was given, was sufficient to carry a verdict for the defendant, upon that point, as the verdict, compared with Lake's map, will show. The defendant insisted that the agreement between Blanchard, as the agent of Raynor, and Timerson, fixed the west line of the nine acres which was conveyed by Raynor to Timerson, at the fence which was built between them, and the jury so found, and have left Timerson his nine acres with that fence as his western boundary. The lands described in the verdict all lie east of the east line of that nine acres. Hence the defendant has no reason to complain of this charge; it brought just the verdict asked for by the defendant, *in that respect.* Lastly. Therefore judgment should be ordered for the plaintiff upon the verdict, with costs.

*Geo. Rathbun,* for the defendant.  I. The court erred in charging the jury that "if the location made by Almar Blanchard was erroneous, and Raynor was ignorant that the mistake had been made by Blanchard, and was ignorant of the subsequent improvements by Timerson, then the plaintiffs are not estopped." This charge conveyed to the jury the idea that if Blanchard failed to locate this line where Raynor's deed called, and Raynor was ignorant of the line Blanchard located, then there could be no estoppel. In *Clark* v. *Wethey,* (19 *Wend.* 320,) it was held that an actual location, *different from the deed,* may be fixed upon by express agreement, and is obligatory upon the parties. And in *Jackson* v. *McConnell,* (12 *Wend.* 421,) the charge of the judge was that the plaintiff was not bound by the location if it was *erroneous,* unless he *knew* of the error and agreed to be bound by it. This was held to be *error,* and a new trial granted. Ignorance of law, or ignorance of the facts of the true state of the matters at the time, does not prevent the application of

Raynor v. Timerson.

the doctrine. (*See Kingsley* v. *Vernon*, 4 *Sandf.* 361; 21 *Wend.* 173.) An estoppel *in pais* is created when the party asserting the estoppel has been induced by the *acts* of the party sought to be estopped, to believe the existence of the facts to which the estoppel relates, and that he has in good faith acted upon such belief, *Lawrence* v. *Brown*, 5 *N. Y. Rep.* 394,) whether the party to be estopped knew of it or not; for to compel the party seeking to establish the estoppel to prove knowledge of his acts done under the very agreement itself, would be a stultification of the agreement. Blanchard was employed by and as the agent of Raynor, and he is bound by those acts, precisely as though he had been present and performed the same acts. He declared to the defendant by that act, that the land east of that line fence is yours; do as you please with it; clear, ditch, drain it. This was in 1855. The defendant commenced clearing the swamp soon after he bought in 1853, and cleared all up in four years. In April, 1857, he (the defendant) bought nine acres of Raynor, starting on this fence and line. At that time, the defendant's land, east of fence, was cleared off and ditched. All this work was done by him because it was his land, as agreed with Raynor. There was no uncertainty, no dispute, no encroachment, no trespass. He was acting in good faith upon the mutual agreement as to the line, and because of that agreement. It was his land, and he treated it as his, and so did Raynor. Raynor knew of the location, and that the land east of the line fence was called and treated as the defendant's. Under these circumstances it is not material, nor was it necessary that Raynor should have notice or should know whether the defendant was making permanent or valuable improvements, to estop him. He had Raynor's admission that the land was his. That led him to make the improvements. Those improvements being much more than the land was worth at the time that line was settled, estops

Raynor v. Timerson.

the plaintiffs. There never had been any dispute about that line then, nor was there any until about the time Raynor died, and then it came from the plaintiffs' attorney. Every act of the defendant in clearing, ditching and draining the identical land recovered in this suit by the plaintiffs, was caused and authorized by the acts and words of Raynor. In April, 1857, after this land had been cleared off by the defendant, Raynor, in his deed of the nine acres, describes that line fence as his east line.

II. The court erred in refusing to charge as requested "That if the jury find that Almar Blanchard was the agent of Raynor to locate the line, and did so locate it, and the defendant and Raynor both acted upon it, and the defendant made the improvements in consequence of such location, then the plaintiffs are estopped." This is all that is necessary to estop the plaintiffs. This was the inducement for the defendant to expend his labor and money. It was his own land he was improving. To take that land from him now, is to defraud him out of all his expenditures.

When a party mistakes the line of his land and encroaches on his neighbor's, and makes permanent and valuable improvements thereon, it works no estoppel, unless it can be shown that the owner of the land knew of the improvements thus being made, and also that the party supposed he was improving his own land. If with knowledge of these things he allows the party to proceed in his work without notice of his mistake or any remonstrance, he will be estopped. He would be guilty of a fraud, otherwise, which the law will not tolerate, This is because he failed to speak, when as an honest man he was bound to speak. After the defendant and Raynor agreed upon the line, and built a line fence between them, Raynor knew that the defendant supposed the question was at rest, and would use that land in the same manner

Raynor *v.* Timerson.

as any other part of his farm. That was the object and intent of both parties. Raynor had a ditch dug on his side of the line fence; the defendant cleared off his swamp up to the line fence, and then bought nine acres of Raynor west of that fence. Raynor in his deed recognized that fence as the line, and as a monument in his deed. This estops the plaintiffs. Raynor's declarations and acts induced the defendant to rebuild the first line fence, and to clear off and ditch and drain the swamp, and also to purchase the nine acres west and adjoining it. Now either of those things should estop the plaintiffs. Instead of that, they have cut out six acres and upwards, and interlocked lands with him. His improvements are lost to him. The value of the nine acres is greatly reduced by being severed from his farm. His line fence is doubled in length and expense. All these results grow out of the acts of Raynor, and without any fault on the defendant's part.

III. The court erred in refusing to charge the jury as requested by the defendant. That request is the law in this case, "that if the line was agreed upon and fenced by Raynor, through an agent, and the defendant agreeing to it, and making permanent improvements upon the land up to the fence, and Raynor also up to the fence, then the plaintiff, after a lapse of a number of years, is estopped from interfering with that line, whether he knew of the improvements being made or not."

IV. The court erred in charging the jury "that to constitute an adverse possession, it must continue for twenty years and must be peaceable." Such is not the law. If the possession is continuous for twenty years, under claim and color of title, it is adverse and by lapse of time becomes perfect, no matter how much disturbance may have been made during the twenty years by any other claimants.

V. The jury in locating the nine acres, established the line between Raynor and Timerson, which was the same

line pointed out by Blanchard. The deed, first of all, called for a location of the line fence. Now when that line was located by the jury for one part of the case, namely, the nine acres, it must remain the same for the whole case. If it was the line before and when Timerson purchased, it was the line when this case was tried. The verdict of the jury is so inconsistent that for this a new trial should be granted.

*By the Court,* JOHNSON, J. The only questions in this case of any importance, arise upon the charge of the judge, and his refusal to charge as requested by the defendants' counsel. The judge charged that if the boundary line between the two pieces of land, was erroneously located by the person designated by Raynor, (under whom the plaintiffs claim,) to point out the line, and Raynor was ignorant that any mistake had been made, and was also ignorant of the subsequent improvements made by the defendant, in fencing and clearing up to such line, the plaintiffs were not estopped or precluded from insisting upon the true line. To this part of the charge the defendant excepted, and requested the judge to charge that if Blanchard, the person designated by Raynor to point out the line, was the agent of the latter for that purpose, and did locate it; and each party acted upon it; and the defendant made improvements in consequence of it, the plaintiffs were estopped from claiming to the true line. The judge refused so to charge, and exception was taken to the refusal. There was evidence in the case tending to show, that Raynor was a cripple, unable to get from his house, and did not know where the line was between himself and the defendant; that when the defendant called upon Raynor in reference to building the line fence, Raynor sent him to Blanchard, to have him, Blanchard, point out the line, saying that Blanchard knew where the line was; and that Raynor never knew where the line had

been pointed out or located, nor what the defendant had done in the way of fencing and improving the land. This location was made in 1855, and the improvements upon the land were made from year to year after that. The jury found in favor of the plaintiffs on this question of Raynor's want of knowledge. Upon these facts as established by the finding of the jury, the elements necessary to create an estoppel are entirely wanting. Raynor, supposing that Blanchard knew where the line was, sent a request to him to point it out to the defendant. It turns out that Blanchard did not know where the line in fact was, and pointed out the wrong line. The defendant was as much bound as Raynor to know where the true line was between the two lots, and it does not appear from the case that there was any difficulty in ascertaining the true line by survey and measurement. In fact I do not see why Blanchard, under the circumstances, was not as much the agent of the defendant as of Raynor. It is not the case where the line was uncertain and difficult to discover, but a case where the defendant instead of taking any steps to ascertain, choses to take the word of Blanchard, and thus, by the mistake of Blanchard, an erroneous line is located, and the partition fence built upon it. Raynor never knew where the line was located, and never knew that the defendant was making improvements upon his land in reference to the erroneous location. The erroneous location was as much the fault of the defendant as of Raynor, and as the latter never knew where the location was made, nor that the defendant was making improvements upon the land on his side of the line fence, he was not called upon to speak, or to give notice, and his silence under the circumstances, implies no acquiescence in the defendant's proceedings, and no wrong. There is no case to be found, where an erroneous boundary line, established under such circumstances, has been held binding and conclusive upon the

ground of estoppel *in pais*, short of twenty years posses-
sion under claim of title. Here possession under the
erroneous location has been much less than twenty years.
The facts as found by the jury, present the simple case of
one making improvements upon the land of another,
under an honest, but erroneous belief that he was the
owner. This forms no ground for transferring the title of
one to another; nor for estopping the owner from reclaim-
ing his own. The later cases agree that possession and
claim of title, under an erroneous location, short of twenty
years, is not sufficient to establish title in such occupant,
as against a valid paper title, unless such location was
made, and the possession under it has been continued,
under such circumstances as to estop the party having
the paper title from asserting his claim against such occu-
pant. (*Terry* v. *Chandler*, 16 *N. Y. Rep.* 354. *Baldwin* v.
*Brown, Id.* 359. *Vosburgh* v. *Teator*, 32 *id.* 561. *Reed* v.
*Farr*, 35 *id.* 113. *Clark* v. *Wethey*, 19 *Wend.* 320.)

In *Jackson* v. *McConnell*, (12 *Wend.* 421,) relied upon by
the defendant's counsel, the action was brought by the
vendor against his vendee. The defendant was put into
possession of the premises by the vendor's brother and
agent, who assisted in making the survey and location of
the land, as the premises described in the deed, and who
was also one of the plaintiffs' lessors. The weight of
evidence was decidedly in favor of the accuracy of the
location, according to the description contained in the
deed. The court say that it is " very questionable whether
under such circumstances a vendor can be permitted to
allege error in the location, but if he can, it is certainly
incumbent upon him to establish the error by the most
incontrovertible evidence." A new trial was granted in
that case, because the judge at the circuit had charged the
jury " that the plaintiff was not bound by the location, if
it was erroneous in any respect, unless he knew of the
error *at the time*, and expressly agreed to be bound by it."

Raynor *v.* Timerson.

In this respect it was held that the circuit judge went too far. There is no such error in this case. Here Raynor did not know, at the time, where his line was, and did not know where it was located, when such location was made, nor that the defendant was making the improvements. He never expressly agreed to be bound, and never remained silent when good faith and honest dealing with his neighbour required him to speak. Mere agreement upon an erroneous line is not enough, within any of the cases, and especially the later cases on this subject. Both the charge and the refusal to charge in this respect, were correct. The exception to that part of the charge that the possession for twenty years must be open, notorious, uninterrupted and peaceable, to give one who has no title, legal ownership, as against the true owner, is of no avail in this case. The exception is to the term " peaceable." But the use of that term, if wrong, could by no possibility have prejudiced the defendant, as his possession had never been disturbed, whatever may have been its character. It had been peaceable as far as it went, and there was no question that it was otherwise. The general tenor and scope of the charge on this point was right, and the exception to a single word in the sentence, which had no bearing upon any issue, or question in the case, cannot be allowed or entertained. A new trial must therefore be denied, and judgment ordered for the plaintiffs, upon the verdict.

[MONROE GENERAL TERM, September 7, 1868, *E. D. Smith, Johnson* and *J. C. Smith,* Justices.]