# CHARLESTON

## ORR *v.* COX.

Submitted January 10, 1907. Decided February 19, 1907.

1. SPECIFIC PERFORMANCE—*Adequate Remedy at Law.*

An agreement or award, whereby an uncertain and unknown division line between adjoining tracts of land, owned by different persons, is identified and made certain as to its location, is not a contract for the sale or conveyance of land, and, as the legal remedy for non-performance is full, complete and adequate, there is no jurisdiction in equity to decree specific performance of such agreement or enforcement of such award. (p. 362.)

Appeal from Circuit Court, Ohio County.

Bill by James Orr against William A. Cox. Decree for plaintiff, and defendant appeals.

*Reversed. Bill Dismissed.*

W. M. DUNLAP, C. P. FLICK, and W. E. KRUPP, for appellant.

HENRY M. RUSSELL, for appellee.

POFFENBARGER, JUDGE:

On the 24th day of May, 1905, the circuit court of Ohio county made a decree in this cause, enforcing an oral agreement between the plaintiff and defendant, fixing the location of a boundary line between their respective farms, from which decree the defendant, relying upon several assignments of error, has appealed. The questions raised will be better understood after a statement of the facts involved.

By deed dated March 15, 1834, Thomas Orr conveyed to Creighton Orr a tract of land containing 179 acres and 11 poles. By the death of Creighton Orr, in the year 1882, this land descended to his son, James Orr. Adjacent to the Orr tract of land lies another which, in the year 1875, was owned by Margaret S. Milligan. It passed by conveyance from Mrs. Milligan to one Giles, her son-in-law, and, after his death, it was purchased by the defendant, William A. Cox. In the Orr deed, the line between them, commencing at a white oak, the location whereof is not disputed, is described as follows: "Thence N. 18 W. 46 poles to a white oak; thence N. 36 W. 146 poles to a sugar; thence N. 6 1-2 W. 30 poles to an ash." In the original deed for the adjacent tract, the description of the line reads as follows: "Thence N. 22 W. 46 poles to a white oak or red oak; thence N. 36 W. 146 poles to a sugar stump; thence N. 5 W. 28 poles to a white oak." Notwithstanding the discrepancies between these two descriptions, it seems to be admitted that the termini of the lines are the same, and that the variation between them, the courses and distances being literally followed, occurs between the extremes, and the amount of land involved is about three acres. Between the years 1875 and 1881, there was controversy about the location of the line between Mrs. Milligan. and Creighton Orr. Two or more surveys were made by which it was found impossible to harmonize the two deeds in respect to the location of the division line. These surveys began at the southern end of the line and attempted to follow the calls of the deeds, with the result that,

in following the Orr deed by its courses and distances, the northern terminus of the line varied from what was recognized and understood to be the corner. In the year 1881, Mrs. Milligan and Creighton Orr entered into a written agreement whereby, reciting the existence of a controversy and difference of opinion between the parties as to the location of the line, they, for the final ending of said controversy and prevention of all other differences concerning the same, submitted to A. S. Eagleson and Robert B. Woods, for final award and determination, their rights, titles, claims and pretensions relating to the matters in difference between them, if the arbitrators should fully agree, in which event their award should be final and irrevocable, but if they should fail to agree on or before the 25th day of June, 1881, the matter was to be referred to the determination of such third person, a surveyor, as said arbitrators should select. On the 21st day of June, 1881, Eagleson and Woods made the following award:

"Ohio County, W. Va., June 21, 1881. We the undersigned having this day met upon the above described premises and after a careful measurement and survey of the lines in dispute have fully agreed as to their exact location, that is to say: Beginning at a white oak corner in an original line near the old Covenanter Church, that the line between the said parties laid down in the original Patent as North 18 degrees west 46 perches to a white oak or red oak, should of read north 22 degrees west to correspond with the bearings of the other lines as found marked, and we after allowing a proper variation have staked out the same, also the line described as running north 36 degrees west 146 poles to a sugar stump, also the line running north 5 degrees west 28 poles to a white oak now standing, all of which we respectfully submit. (Signed) Robt. B. Woods, A. S. Eagleson."

The evidence clearly indicates that such fences between the two farms as were in existence at that time were substantially on the line as fixed by the award. They were irregular and in bad repair and seem never to have been of uniform construction and such as might be considered good fences. They were irregular in location, not exactly following the line, but adhering substantially thereto and in some places

consisted of posts and rails, in others of posts and plank and in others of palings or pickets. After the arbitration some slight changes were made in portions thereof, and the parties continued to hold possession in substantially the same manner as they had done before.

Cox did not obtain the Milligan tract of land until the fall of 1898, nor take possession of it until the spring of 1899. He had come into the neighborhood from elsewhere in the fall of 1881, some months after the award had been made, and, according to his testimony, and so far as the evidence shows, knew and had heard nothing of the boundary line controversy or the arbitration and award. In the year 1902, ignorant, as he claims, of all that had transpired between his predecessors in title and Orr, he sought information from James Orr as to what understanding or agreement had existed concerning the respective obligations to build or maintain the division fences. He wanted to know which portion of it he should repair. In reply he was informed that a controversy existed as to the location of the line, which it would be necessary to settle before dividing it for the purposes of building and maintaining fences thereon. To this he assented and, soon afterwards, Clement C. Smith came, at the solicitation of Orr, and by consent of both parties, ran the line, the parties contributing equally to the expenses thereof. Having followed the calls of the deed from south to north, his survey, when completed, located the line as claimed by Orr. In the following fall and spring, Orr removed to the Smith line the south half of the fence, and, in the spring and after the survey, Cox set the posts on the Smith line for the north half of it. Before completion of it, he heard of, and found, the award, and immediately afterwards took up his posts, tore down the fence Orr had built and put up a fence on the old line as fixed by the Eagleson and Woods award, and Orr then brought this suit to enforce the alleged agreement to accept the line as located by Smith.

The bill proceeds upon an alleged right to have specific performance of an oral agreement for the sale of real estate, taken out of the statute of frauds by part performance thereof. Whether the action of Smith, pursuant to the agreement of the parties, be regarded as an award, or the

action of the parties in having Smith run the line and then so changing their respective possessory holdings as to con- form to it, as an agreement, the inquiry concerning jurisdic- tion in equity will be governed by the same principles. It is neither an award, determining that an agreement to sell or convey land has been made, nor an agreement to sell or convey. It is merely an award or an agreement which is relied upon as concluding the parties on the question of the true location of the boundary line. Should the contention of Orr be sustained, his title to the land in dispute would rest not upon the oral agreement but upon his deed. The agreement or award, defining the boundary line, would pass no title.

"It may be regarded as settled, that a disputed boundary between two adjoining proprietors may be settled by parol agreement, when the agreement is accompanied by possession according thereto. Such parol agreement is not regarded as passing any real estate from one proprietor to the other but as simply ascertaining the line to which their respective deeds extend; and hence it follows, that long acquiescence by one of adjoining proprietors in a boundary line as established by the other is evidence of an agreement, that such is the boun- dary." *Gwynn* v. *Schwartz*, 32 W. Va. 487, 500. To the effect that such an agreement is not within the statute of frauds, see *Smith* v. *Hamilton*, 20 Mich. 438: *Vosburgh* v. *Teator*, 32 N. Y. 565; *Raynor* v. *Timeraon*, 51 Barb. 530; *Baldwin* v. *Brown*, 16 N. Y. 359; *Turner* v. *Baker*, 64 Mo. 218; 27 Am. Rep. 226; *Taylor* v. *Zepp*, 14 Mo, 482; *Blair* v. *Smith*, 16 Mo. 273; *Speers* v. *Walker*, 1 Head. 166; *Tar- rant* v. *Terry*, 1 Bay 239; *Cutler* v. *Callison*, 72 Ill. 113; 2 Gilman 419; *Kess* v. *Norton*, 12 Wend. 127; *McCormick* v. *Barnum*, 10 Wend. 109; *Hogey* v. *Detureiler*, 35 Pa. St. 409. This rule seems to be subject to the qualification that the true location of the line must be in doubt. Many author- ities hold that if its location is known and not disputed, an agreement upon a different line amounts to an agreement to convey and is void, if not reduced to writing or taken out of the statute by part performance. *Terry* v. *Chandler*, 16 N. Y. 354, 69 Am. Dec. 707; *Jackson* v. *Douglass*, 8 Johns. 367; *Stuyvesant* v. *Dunham*, 9 Johns. 61; *Pasley* v. *English*, 5 Grat. 141.

Tested by the principles just stated, the award or agreement, no matter which, set up by the bill, does not require from Cox a conveyance of any land, but, on the contrary, merely identifies and makes certain the location of a disputed boundary line between the lands owned by him and Orr—a location as to which the evidence was by them considered so uncertain and conflicting as to make its identity unknown or doubtful. This being so, there is no occasion for resorting to equity. Each has the legal title to all the land he claims, neither is trustee for the other in any sense or degree, and each has a full, complete and adequate remedy at law. If Orr can sustain his claim to the land in dispute by establishing the location of the boundary line as claimed by him, by the calls of the deeds, by agreement or by the award of an arbitrator, he can do it in a court of law as well as in a court of equity. If what Smith did at the instance of the parties can be considered an award, jurisdiction in equity cannot be founded upon it, for the reason that it is mere evidence, to be considered in ascertaining the location of the line. It creates no new right or title, on the one side, and imposes no new or additional obligation on the other. It requires no act to be done by either party, and if it did, equity would not interpose to enforce it, unless the act required were such in its nature that the law affords no remedy, or only an inadequate one, for its non-performance. Morse Arb. &. Aw. 602, 603; Russell on Arb. 3 ed. 545; *Jones* v. *Boston Mill Corp.*, 4 Pick. 507; *McNeil* v. *McGee*, 5 Mason 344. Judge Story said, in the case last cited, that equity in such cases simply executes the agreement of the parties, "ascertained and fixed by the arbitrators." In *Jones* v. *Boston Mill Corp.*, Chief Justice Parker declared a decree in such case to be " the specific performance of a contract in writing; for the submission is the agreement. It is virtually a contract to do what shall be awarded; and there does not seem to be any reason why it is not as much the subject of equity power, as if the contract were complete without the interference of an arbitrator." From this it necessarily follows that the thing awarded cannot be had by way of specific performance in equity, unless it be such in nature as would make that form of remedy appropriate if it were matter of mere agreement, and not of award.

These views result in the conclusion that the demurrer to the bill should have been sustained, and, as the evidence taken tends to prove no more than is stated in the bill, if all that is claimed for it be conceded, no case for equity jurisdiction appears in either the bill or the evidence. Under such circumstances, this Court, on reversing the decree, will not remand the cause with leave to amend the bill, but will reverse and annul the decree and dismiss the bill. *Bier* v. *Smith*, 25 W. Va. 830, 837.

For the reasons stated, the decree appealed from will be reversed, the demurrer sustained, the bill dismissed and a decree entered, requiring the appellee to pay to the appellant his costs in this Court and in the circuit court.

*Reversed.    Remanded.*