ALBANY,
Jan. 1812.

STUYVESANT *against* TOMPKINS AND DUNHAM.

STUYVESANT
v.
DUNHAM.

THIS cause came before the court, by a writ of error, from the mayor's court of the city of *New-York*. *Tompkins* and *Dunham*, the defendants in error, brought an action of *trespass quare clausum fregit*, against *Stuyvesant*. The defendant pleaded not guilty. From the *bill of exceptions*, taken at the trial, in the court below, it appeared that the plaintiffs were seised in fee of a certain piece of land, in the 8th ward of the city of *New-York*, and that the defendant was also seised of another piece of land, *adjoining* the land of the plaintiffs. At the time of the supposed trespass, there was a fence between the two pieces of land, and the plaintiffs were in the actual possession of all the land on one side of the fence, and the defendant of all the land on the other side. The fence was *crooked ;* and, in a conversation held between the defendant and *Durham*, one of the plaintiffs, previous to the time of the supposed trespass, the defendant pointed out to the said plaintiff the two ends of the fence, as the extreme points of the boundary line between the two pieces of land, and declared that he believed the true boundary line between them was a *straight* line; but that he would examine the maps and papers, and see whether it was so or not. Afterwards, and before the supposed trespass, the defendant declared to the said plaintiff, that he had examined, and found the boundary line, between the two pieces of land, was a straight line. It was proposed, on the part of the plaintiffs, to employ a surveyor to run the line; but the defendant said it was unnecessary, as they could run it themselves. The plaintiffs, however, employed a surveyor, who ran a straight line between the two extreme points pointed out by the defendant, who saw the surveyor while running the line, and made no objection. The plaintiffs, then, caused a fence to be erected on such straight line, in a place beyond the first-mentioned fence, and in the actual possession of the defendant, who, afterwards, caused the fence, so erected, to be *thrown down*, which was the *trespass* complained of.

The defendant proved that he and his ancestors had been in possession of the piece of land mentioned, about 25 years preceding the commencement of the suit, during all which time the first fence had been the actual boundary between the two pieces of land, and

*A party must have actual and lawful possession of real property, to enable him to maintain trespass. The lands of A. and B. were separated by a crooked fence, and A. showed to B. the two extreme points of the division line, and declared that the true boundary line was a straight line; and B. caused a straight line to be run between the two points, and put up another fence accordingly, by which he included some of the land which had been in the possession of A. and his ancestors, above 25 years; and before the fence was put up, A. gave notice to B. not to erect it; and, after it was put up, A. came and pulled it down. In an action of trespass brought against A. by B. it was held, that the parol declaration of A. was not sufficient to change the possession; and, having availed himself of the locus peniten-tiæ, his previous admission did not sanction the change of the boundary line*

ALBANY,
Jan. 1812.

STUYVESANT
v.
DUNHAM.

had been maintained by the plaintiffs, and those under whom they held; and, during all that time, the said fence had not been on the line run by the said surveyor; but the place in which the trespass was supposed to have been committed had been, during the whole of that time, in the actual possession and occupation of the defendant and his ancestors. After the line run by the surveyor, the defendant forbade the workmen, employed by the plaintiffs, to put up a fence on the line, who gave notice thereof to the plaintiffs, and the fence thrown down by the defendant was put up, after such notice. The plaintiffs purchased the piece of land owned by them of one *Mann;* and, previous to the execution of the deed, a survey was made, and by the map and survey, the first-mentioned fence was the boundary line between the two pieces of land; but *Mann* told the plaintiffs that such line ought to have been a *straight* line. The place in which the trespass was supposed to be committed, was not included in the land described by the map of such survey.

The RECORDER charged the jury, that they might, if they thought proper, infer from the *parol* admissions of the defendant, that both parties originally intended to occupy, according to a *straight* line, and had occupied under a belief that the boundary was a *straight* line; and, if they believed it was so, then the defendant might be considered as holding by sufferance or permission, and that so the possession of the defendant was not adverse, and the plaintiffs had a right to maintain their action. The jury found a verdict for the plaintiffs, on which the court below rendered judgment.

*Colden,* and *D. B. Ogden,* for the plaintiff in error.

*T. A. Emmet,* contra.

*Per Curiam.* The charge of the recorder was incorrect, for the facts in this case clearly show that the plaintiffs below were not entitled to an action of trespass. The party must have actual and lawful possession of real property, to enable him to maintain trespass, and the plaintiffs below had not such possession. Their entry was, of itself, an act of trespass. The land owned by the parties respectively, was separated by a crooked fence, and the defendant below showed to one of the plaintiffs the two ends of the fence, as the extreme points of the boundary line between

them, and declared that the true boundary line was a straight line. The plaintiffs then employed a surveyor to run the line, and the defendant saw the surveyor while in the act of running it, and made no objection, but went away before the surveying was completed. The surveyor ran a straight line between the extreme points so shown by the defendant, and the plaintiffs moved the fence according to the line so ran, and it was erected beyond the former fence, and on a place in the actual possession of the defendant. The defendant proved that for more than twenty-five years before the action, he and his ancestors had been seised and possessed of the *locus in quo*, and the fence so removed had been, for that length of time, the actual boundary line between the parties and those under whom they held. The defendant further proved, that after the line was run, he disapproved of it and forbade the fence to be removed on to his land, and after it was erected he threw it down, and for this act the action was brought. The *recorder* charged the jury, that from the parol admissions of the defendant, they might infer that the parties had always intended a straight line, and that the defendant might be considered as holding by sufferance, or permission, and that his possession was not adverse. This doctrine cannot be supported. The parol admission of the defendant was certainly not sufficient, *per se*, to change the possession. To give to a naked parol declaration, that the true line was a straight line, such an effect, after so long an acquiescence in a boundary line, would counteract the beneficial effects of the statute of frauds, and render the title to real property alarmingly insecure. The defendant's possession, for upwards of twenty-five years, was, of itself, an absolute title, and a bar to all the world. He had availed himself of the *locus penitentiæ*, and did not sanction the running of the boundary line, or the attempt to change the possession.

The judgment below must, therefore, be reversed.

Judgment reversed.