Brown v. Bridges.

This sum the plaintiff, if she so elect, may remit.

In the event of her failure to do so, the judgment of the court below will be

Reversed.

## Brown v. Bridges.

1. Adverse possession: STATUTE OF LIMITATIONS. Where lands of adjacent owners are divided by a partition fence not on the true line of survey, and one of such owners claims and cultivates up to the fence as the true line, though it is in fact beyond it and on the land of his neighbor, for a period of ten years, his possession will be held to be adverse under claim of right, and to confer upon him a title by prescription to the land lying between the actual line of survey and the fence.

2. —— And in order for this rule to apply, it is not necessary that there should have been a controversy in respect to the division line, prior to the lapse of the statutory period of limitation.

3. Instructions: MUST BE CONSIDERED TOGETHER. If, as a whole, instructions given by the court to the jury contain a correct exposition of the law governing the case, the appellate court will not interfere, although, separately considered, they might be objectionable.

4. Trespass: HIGHWAY: OFFICER. It seems that a road supervisor would not be liable for trespass in opening and working a road, for minute variations from or infringements over the line upon the lands of adjacent proprietors, if, in the discharge of his duty, he performed the same in an ordinarily prudent and careful manner.

5. —— LANDS IN POSSESSION OF TENANT. Under our system of procedure, the owner of real estate, though it is in the actual possession of his tenant, may maintain an action against a trespasser for injuries thereto.

6. —— FENCES. A fence is as matter of law, *prima facie*, a part of the realty, and an injury thereto is an injury to the realty. If it be claimed by the defendant that, under the peculiar circumstances of the case, it is not impressed with that character, the *onus* is upon him to show it.

*Appeal from Des Moines Circuit Court.*

SATURDAY, JANUARY 28.

THE plaintiff filed in the Des Moines circuit court a petition alleging that he was seized and possessed of the N. W. ¼ of S. E. ½ section 20, township 72, range 3, and the W. ½ of N. E. ¼ section 29, township 72, range 3. That the defendant broke and entered said close, and broke down and removed the fences, etc. That the defendant cut down eighty rods of osage orange hedge adjoining plaintiff's close, and deposited the rubbish on plaintiff's premises. That defendant dug a trench upon and along said close and removed therefrom a large quantity of earth. Answer, a general denial, and an averment that the alleged acts were done by the defendant as road supervisor according to law and in obedience to duty in opening a highway established.

The bill of exceptions shows that evidence was introduced *tending* to show that before the bringing of this suit plaintiff owned a forty acre tract of land lying north of a forty acre tract entirely inclosed by a hedge belonging to Bridges, and a fifty acre tract of land south of Bridges' said tract; that originally there was a rail fence dividing the fifty acre tract of Brown from the forty acre tract of Bridges, and each party kept up one-half thereof; that in 1854 defendant planted a hedge around said forty acres, and has ever since cultivated the same; that when Bridges put out said hedge he planted the same ten or fourteen feet inside his lines all around said tract; that on the south side the hedge was so planted that there was room to plow between the same and the partition fence; that gradually, as the hedge grew, each party took away his respective portion of the rail fence, and thus the hedge became the partition fence; that Brown had kept up on other lines between

him and Bridges a fence equivalent to the hedge; that
Bridges, in working the east half of the south row of said
hedge, hacked the same so that the tops could be turned
over and bent in toward the body of the hedge, and said
bending or turning was on the narrow strip of land claimed
by Bridges, and, to some extent, upon and over Brown's
land; and that said limbs so turned have grown, incumber-
ing a narrow strip of Brown's land.   That up to the date
of this suit no question or controversy had ever arisen as to
where the true division line was; and that Brown had
always possessed and cultivated as near as he could to said
fence and hedge, and claimed to own the same under his
deed.   That the plaintiff rented the north forty acres to one
Randolph, who proceeded to inclose the same; and asked
permission of Bridges to connect his rail fence to the north-
west corner of Bridges' hedge; that Bridges notified Ran-
dolph not to build his fence across the ten to fourteen feet
north of defendant's hedge, nor connect therewith until he
or Brown should arrange to keep up an equivalent of fence
elsewhere; that Randolph constructed his fence across said
strip and connected with said hedge; that Bridges set two
panels of said fence off his land, and left a gap, which
Randolph, in a day or two, repaired.   That a road thirty-
three feet wide had been established, running along all of
these several tracts; that in 1868 defendant was road super-
visor, in a district including the fifty acre tract; that he
received orders to open and work so much of said road as
was within his district; that Randolph was in possession of
said fifty acres as tenant of plaintiff, and defendant on several
occasions requested Randolph to take in his fence which
stood on the center line of the road; that Randolph refused
to do so, and plaintiff notified defendant not to move said
fence; that defendant, as supervisor, proceeded to set in
the fence and work the road.   There was conflict of evi-
dence as to the precise distance which said fence was set in,
and also as to where the true line was, dividing the fifty acre

Brown v. Bridges.

tract from the forty acre.tract of Bridges, there being two monuments, each of which was, by the respective owners, claimed as the true corner.

The plaintiff claimed that the defendant had set in the fence from one to four feet too far; had broken some rails in removing the same, and had dug a trench on one side of the road from which the earth had been taken to construct a culvert.

The cause was tried by a jury. Verdict and judgment for plaintiff for $5. Defendant appeals.

*Halls & Baldwin* for the appellant.

*P. H. Smythe* for the appellee.

DAY, J. — Upon the instructions given arise all the alleged errors. We will consider only those insisted upon in the argument.

I. The court instructed the jury as follows: "If the plaintiff had been in peaceable possession of the land up to the hedge, and cultivated and claimed it as his, and such claim of ownership has been open and notorious and adverse to all the world for more than ten years, then he would have the same right to recover for a trespass upon it as if he had had a title direct from the government, and it would make no difference what or where the orignal corner was." Appellant does not deny that a valid title may be acquired by prescription, nor does. he insist that, under ordinary circumstances, any thing more than what is specified in the instruction is necessary to the creation of such title. His position is, that, before the statute of limitations will run against the rights of parties with reference to division lines and partition fences, there must be a controversy followed by the statutory period of adverse possession. No authority has been cited, nor has any fallen under our

*Margin note:* 1. ADVERSE POSSESSION: statute of limitations.

notice sustaining this view. The case of *Stuyvesant* v. *Dunham*, 9 Johns. 61, is directly in point. In that case the land owned by the respective parties was separated by a crooked fence.

The defendant pointed out to plaintiff the extremes of this fence, and informed him that the true boundary between them was a straight line connecting these points. Thereupon the plaintiff employed a surveyor and removed the fence upon such straight line, thereby bringing within his own inclosure a strip of ground which for twenty-five years had been in possession of defendant and his grantors. The defendant threw down the fence and was sued therefor in trespass. It was held that his prescriptive title was complete. See, also, *Burdick* v. *Heivly*, 23 Iowa, 511, and cases cited. In our opinion the instruction correctly reflected the law.

II. It is claimed that the sixth and ninth instructions given at the request of the plaintiff are irreconcilably in conflict with the third, given at the request of **3. INSTRUC- TIONS: must be considered together.** the defendant. These instructions given for plaintiff are as follows:

6. "The fact that the defendant agreed to keep the hedge between him and the plaintiff in repair would not justify the defendant in cutting down and throwing the hedge and rubbish upon the land of plaintiff; and in that case he would be a trespasser and liable for damages."

9. "Even if Bridges agreed to keep up the hedge between him and Brown, he was not authorized to throw the rubbish and cuttings on the land of Brown, and if he did so he would be a trespasser; and before he can be protected in doing so he must show that Brown either expressly or impliedly consented to his putting the same on the land."

The instruction given for defendant, and which is claimed to be in conflict with those above quoted, is as follows:

Brown v. Bridges.

"If you find from the evidence that one of the acts complained of was the cutting and turning of an osage orange hedge, so that some of the limbs and material thereof extended over the line between the plaintiff and defendant, yet, if, at the time of the cutting thereof, the said hedge was, by mutual consent and arrangement, treated as a partition force, and the duty of keeping up the same devolved upon the defendant, and the defendant cut the said hedge in good faith, simply to improve and strengthen the fence and make it useful, and did not incumber the land of plaintiff with the material more than was necessary in the proper performance of this labor, or permit the plantiff's land to remain so incumbered and in a manner that was then satisfactory to both parties, and the plaintiff stood by and saw it done, and made no objection to the manner in which it was done, then, as to such act, you will find for defendant."

It is often very difficult, and in many cases scarcely possible, to embody in one instruction all the exceptions and qualifications which limit a given proposition of law, in its application to the facts of the case under consideration. The instructions of a court must be considered together. *Ruble* v. *McDonald*, 18 Iowa, 497; *Hamilton* v. *State Bank*, 22 id. 311.

If, as a whole, they contain a correct exposition of the law, this court will not ordinarily interfere, although, separately considered, they might be objectionable. If, however, they are so framed as to present a conflict, or tend to mislead the jury, they will constitute a ground for reversal. *Hoben* v. *The Burlington and Missouri River Railroad Co.*, 20 Iowa, 562; *Price* v. *Mahoney*, 24 id. 582. The instructions for plaintiff, under consideration, directed the jury that the fact that the defendant agreed to keep the hedge between himself and plaintiff in repair would not justify the defendant in cutting down and *throwing* the *hedge and rubbish* upon the land of plaintiff. Abstractly

considered, this instruction furnishes a correct enunciation of the law; as applied to the facts of this case, however, it is perhaps too broad and general. Hence the court, at the request of the defendant, presented the limitations and qualifications with which it was to be received.

The jury were further told that, if the defendant cut the hedge *in good faith*, simply to *improve and strengthen* the fence and make it useful, and did not incumber the land of plaintiff or permit the same to remain incumbered with the material, *more than was necessary* in the proper performance of the work, and if the same was done in a manner *satisfactory* to both parties, and the plaintiff *stood by and saw it done* and *made no objection* to the manner in which it was done, for such acts he could not recover. The instructions thus limited are clearly correct. The evidence not being before us, we do not know whether any proof was introduced, which would have justified the jury in holding that the defendant acted in good faith, and with ordinary care. From the record before us we cannot reasonably infer that these instructions mislead the jury to the defendant's prejudice.

III. It is further claimed that the plaintiff's tenth instruction is inconsistent with the defendant's sixth. These instructions are as follows:

10. "Even if defendant was authorized to open the road on plaintiff's land, he could not go beyond the line of the road; and if he cut the land of plaintiff, or removed the fence more than sixteen and a half feet east of the true line in the road, such an act was a trespass for which plaintiff is entitled to recover."

*4. TRESPASS: highway.*

6. "It is not true that if, while acting as road supervisor, the defendant, in opening the road in controversy, placed the fence an *inch* too far, he is liable in trespass. If defendant, in the performance of his duty as road supervisor, does the same in an ordinarily prudent and careful manner, then he cannot be made responsible for slight discrepancies."

The remarks before made are equally applicable to these instructions. As applied to the facts of many cases, instruction ten would need no modification. As applied to the case under consideration, however, it was, perhaps, objectionable, in that it loses sight of the maxim *de minimus non curat lex*. Instruction six, of defendant, supplied this defect. Together they contain a fair statement of the law, by which it is not probable the jury was misled.

IV. The only remaining alleged error insisted upon is the giving of the following instruction:

"Even if the land was in the possession of a tenant at the time of throwing down the fence, if you find that 5. ——lands in defendant was a trespasser in throwing down possession of tenant. the fence, and that the trespass was an injury to the real estate, plaintiff would be entitled to recover. A permanent injury to a fence is injury to realty, for a fence is a part of the land." No question is made upon the plaintiff's ownership of the *locus in quo*, but it is claimed that he cannot maintain the action if the premises were in the occupancy of a tenant.

At common law, possession in fact of the real property to which the injury was done was necessary in order to entitle a party to maintain an action of *trespass quare clausum fregit*. *Wickham* v. *Freeman*, 12 Johns. 183; *Stuyvesant* v. *Dunham*, 9 id. 61; *Campbell* v. *Arnold*, 1 id. 510. A landlord could not maintain an action of *trespass* for an injury to land while his tenant was in the actual possession of the premises. The landlord or reversioner, however, could maintain an action on the case for the injury to the reversion. These distinctions grew out of the refinements of the common law, which varied the form of the remedy with the nature of the injury, and the character of the relief required. Happily these refined distinctions have no place in our system of jurisprudence. All technical forms of action are abolished. All that is required is, that the facts constituting the cause of action

shall be alleged. And, if these facts are such as would have entitled the plaintiff to relief under any of the recognized forms of action at common law, they furnish the basis of relief under the code. We hold, therefore, that, under the system of procedure recognized by the code, the owner of real estate which is in the actual occupation of a tenant may maintain an action for an injury to his estate.

It is further claimed that whether an injury to the fence is an injury to the realty is a question of fact for the jury. 6. —fences. *Prima facie* a fence constitutes a part of the realty, and is such as matter of law, as much as a barn or a house. If it is not impressed with that character it is in consequence of peculiar circumstances, which must be shown by the party claiming the advantage thereof. It does not appear in this case that any proof was introduced upon the subject.

The court, therefore, did not err in charging the jury that the fence was part of the realty.

We discover no error in the proceedings below.

Affirmed.