WILLIAM H. SCHOEN *v.* HENRY S. McCOMB, JACOB HILL, JOHN FERGUSSON and JOHN C. IRELAND.

In an action of trespass *quare clausem fregit* the plaintiff must prove the description and abuttals of the close as set forth by him with substantial accuracy, or he will not be entitled to recover.

If on a survey and plat returned in a proceeding in the Court of Chancery, certain promises be defined and described with a line so many feet, specifying the number of them, on a certain street, and by decree in partition the return is confirmed, and the premises are so assigned and allotted in severalty to one of the parties entitled, all persons afterward succeeding to the title to them under him, will be estopped from controverting the length of the line therein stated in a collateral suit or proceeding in any other court.

THIS was an action of trespass *quare clausem fregit* by the

plaintiff against the defendants for a trespass committed upon his premises situated on the western side of Shipley Street between Sixth and Seventh Streets in the City of Wilmington, adjoining premises formerly owned by one of the defendants, Henry S. McComb, and sold and conveyed by him to his mother, Mrs. Martha McComb prior to the commencement of the action, but with an alley between them, and the only question of fact involved in the case was as to the location of the partition line between the respective premises. The alleged trespass consisted of an entry by the defendants upon the premises of the plaintiff, and the taking down and erecting again a partition wall of brick the whole length or depth of his lot back from Shipley Street, some eight inches over the true partition line of the two lots, and upon his premises, not only without his consent, but against his earnest remonstrances. The plaintiff's lot fronted sixteen feet on Shipley Street, and extended in parellel lateral lines back from it to the depth of ninety feet. The water pipe from the adjoining premises to the plaintiff's hydrant was also cut off by the order of the principal and first named defendant, and the change in the location of the partition wall rendered it necessary for the plaintiff to change the position of his hydrant, and to put down a new water pipe leading from the main to it.

The trespass complained of was committed in the month of November 1869, but it also appeared in evidence that prior to that time, and as early as the year 1856, whilst McComb was the owner of the adjoining property, he had a new partition board fence erected between the two lots, in lieu of an old one then much dilapidated which had been erected there several years before that time, but which new fence was erected some four inches over the line of the old one, on the premises claimed by the plaintiff; and that the partition wall built in 1869, had been erected from three to four inches over the line of the new fence, and to that extent still further upon the premises of the plaintiff. The City Surveyor had, however, previous to

the erection of the partition wall, located the division line between the lots by the courses and distances designated in the deed under which Henry S. McComb had acquired from John McDowell & wife in 1853, his title to the adjoining property, and the partition wall had been erected on the division line so located by him.

The plaintiff proved his legal title in fee to the premises claimed by him by formal deeds of conveyance and by devise, from the year 1848 down to the time of trial, and by the continuous possession of them in the meantime by himself and those through whom he had derived his title to them, and rested his case.

*Gordon*, for the defendants, moved a nonsuit on the ground that the description of the *locus in quo* set forth in the declaration of the plaintiff, had not been substantially proved as alleged, and which was necessary, as the statute expressly requires such a description to be set forth in the declaration in an action of trespass *quare clausem fregit*. And if it must be set forth, then it is material and must be substantially proved as set forth  But the proof in regard to it had varied most materially from the description in several important respects, and particularly, that the abuttals as set forth in it were altogether too vague and indefinite to designate with the requisite degree of certainty the location of the alleged trespass.

*Patterson*, for the plaintiff. At common law no such description was necessary in the narr, and was only required by new assignment in the replication to the plea of *liberum tenementum*, but though the statute now requires it to be set forth in the declaration, it does not require that the description shall be proved precisely as stated, and in this case the evidence had corresponded sufficiently with it in every essential particular.

*By the Court.* It appears by the record in this case that although a description of the *locus in quo* is set forth by the

plaintiff in his declaration, the defendants have in addition to the general issue, entered the plea of *liberum tene-mentum*, and in which they have set forth a description of the premises with the abuttals of the place in which they allege the acts complained of were committed, and defend and justify them on the ground that it was not on the premises of the plaintiff, but on the premises of Mrs. McComb, under whose authority they had a lawful right to do all they did there; and to this plea the plaintiff has replied and new assigned in his replication the same identical description set forth in the plea of the defendants, and on that, issue has been taken.   But it is all a matter for the consideration of the jury; the plaintiff, however, must prove the material parts of the description last set forth by him with substantial accuracy, or he will not be entitled to recover.

*Bates*, for the defendants, offered in evidence the deed to Martha McComb from Henry S. McComb for the adjoining premises, executed on the 20th day of December 1868, also a deed to Henry S. McComb from John McDowell & wife for the same executed on the 6th day of October 1853, also the will of Benjamin Boulden deceased, duly probated on the 14th day of December 1833, devising the residue of his real estate, of which the adjoining premises of the defendant in question then constituted a part, to be equally divided between nieces of his named in the devise, of whom McDowell's wife was one, and also the record of a partition in Chancery and decree therein on the 16th day of November 1852, of the real estate so devised to them, under and by virtue of which the premises last mentioned were assigned and allotted in severalty to McDowell and wife in her right, as the same had been described in the survey and plat returned in the proceeding in partition, and had been approved by that court.   It appeared, however, by the survey and plat so returned into that court, that the premises as so assigned and allotted to them, were in the metes and bounds therein stated,

described as bounded by a line of seventy feet and one sixteen hundredth of a foot on the south side of Shipley street, whilst by the deed to H. S. McComb from McDowell and wife, and also by the deed to Boulden, the testator, from the executors of John Ferris deceased, for the same, executed on the 15th day of December 1828, which was likewise put in evidence by the defendants, they were in the metes and bounds therein stated, described as bounded by a line of seventy one feet and one sixteen hundredths of a foot on the south side of Shipley Street. The defendants also proved that the old fence which existed before the new one was erected in 1856, stood precisely on the line on which the partition wall in question was erected in 1868.

*Patterson*, contended that the plaintiff had not only established a good title to the *locus in quo* by an adverse possession of twenty years, at least, but that the defendants were concluded and estopped by the partition and decree in Chancery from asserting any claim or title to more than seventy feet and one sixteen hundredths of a foot on the south side of Shipley Street, which would not include any portion of the narrow strip of land in dispute between the parties, and upon which the alleged trespass had been committed, and asked the court to so instruct the jury.

*Bates.* Under the plea of *liberum tenementum*, if the defendant, Mrs. McComb, had proved a legal title to the *locus* in question, the defendants were entitled to a verdict, unless the plaintiff had clearly established an adverse possession of twenty years, at least, for in such case all the presumptions of law mere in favor of the legal title. *Ang. on Lim.* 404. And such adverse possession must have been exclusive, hostile to the right of ownership of the owners of the adjoining premises, and of all other persons, and must have been marked by a definite and distinctly recognized boundary or limit in the meantime. Or if it appeared from the evidence that there was a mixed possession of it in the meanwhile, the law would adjudge

28

the possession to have been in the party who had shown a
a legal title to it. *Inskeep v. Shields et al.* 4 *Harr.* 345. If
prior to and up to the year 1856, when the new partition
fence spoken of by the witnesses was erected, the respective
holders of the adjoining lots in question were ignorant of
the exact location of the line of division between them, and
the plaintiff and those under whom he claims title, through
inadvertency or ignorance of its true location, had includ-
ed in his inclosure, or had in their sole and exclusive pos-
session as part of their property or premises, any adjoin-
ing ground which in fact belonged to the owners of the
adjoining premises during that time, and neither of the
respective owners of the two lots were aware of it, such a
holding would not constitute an adverse possession of it
in contemplation of law, or in the legal sense of that term.
*Ang. on Lim.* 413.

*Gordon.* The discrepancy referred to between the deeds
of Ferris' executors to Boulden and of McDowell and
wife to H. S. McComb, and the decree in partition in the
Court of Chancery, as to the length or extent of the line
of the premises referred to in them, on the south side of
Shipley Street, was not material, inasmuch as it was a mere
matter of description in the deeds and in the survey and
plat returned by the surveyor in the proceeding in Chan-
cery, not essential to be strictly proved as stated in them,
but which if erroneous, might be shown to be so, and
might be corrected and reconciled like any other imma-
terial description by the weight and preponderance of the
evidence produced in the case; and, therefore, the defend-
ants were not estopped by the decree in that court to deny
that the line of the premises in question extended but
seventy feet and one sixteen hundredths of a foot, instead
of seventy one feet and one sixteen hundredths of a foot
on the south side of that street. 1. *Greenl. Ev. sec.* 26. *n.* 1.
And such was particularly, the rule of law on the subject
in this country. Estopplse by deeds or surveys do not
apply to matters of description merely, because they are
not supposed to have received the particular or deliberate

attention of the parties to them, and much less could this matter of discrepancy between the plat and survey returned to that court and the deeds he had mentioned, be supposed to have received any notice or attention whatever from the Court of Chancery. But if the court should be of a contrary opinion on that point in the case, then the intervening strip of land of one foot or less in width, and on which the alleged trespass had been committed, was undisposed of and unaffected by the partition in Chancery, and still continued vested in common in the devisees named in the will of Boulden, of whom McDowell's wife was one, and as they had by their deed conveyed to H. S. McComb all their right, title and estate in the premises devised to her by the testator, and he had in turn conveyed the same to his mother, Mrs. McComb, under whose authority and by whose orders and direction the partition wall in question had been erected, she was now, at least, seized as tenant in common of that portion of the premises with the remaining devisees of it under the will of the testator ; and that if so, as such a co-tenant in common of it, she could not be liable for a trespass upon it at the suit of any one, and certainly not at the suit of the plaintiff.

*Patterson.* If H. S. McComb or his mother, Mrs. McComb, never had any legal title to the strip of land in question, as they never had, if they were estopped as he believed they were by the partition and decree in Chancery from laying any claim to it, then no one act of aggression merely, or one simple entry and trespass committed upon it by either of them, such as the taking down of the old fence and attempting to erect another in the year 1856, could have the effect in law to interrupt or divest the plaintiff's possession of it, or could constitute any interruption whatever of it. On the contrary, his adverse possession would remain continuous, notwithstanding such a temporary entry and trespass upon it, particularly, if the plaintiff opposed the entry and thereby prevented the erec-

tion of the fence upon it. *Staguessant v. Tompkins*, 9 *Johns.* 61. *Clark v. Hill*, 1 *Harr.* 335. He also contended that under the facts and circumstances proved, the plaintiff was entitled to punitive or exemplary damages. *Sed. on Dam. secs.* 34. 38.

*The Court, Houston, J., charged the jury*, that to entitle the plaintiff to recover in the action, they must be satisfied by the evidence before them that he was in the actual and exclusive possession of the *locus in quo*, or the ground on which the partition wall in question was erected, at the time when it was erected; and as that constituted the trespass complained of, that it was committed by the defendants. As to the question, however, which had been raised in regard to the effect of the proceedings and decree in partition in the Court of Chancery under the devise in the will of Benjamin Boulden of his real estate to the devisees named in it, was a question of law for the decision of the court, and not for the decision of the jury, it was his duty to say to them that if they were satisfied from the evidence that John McDowell and wife, in right of his wife, as one of the devisees mentioned in it, were parties to that partition, and it appeared by the survey and plat returned to that court, and by the partition and decree made in that proceeding, that the house and lot which was afterward sold and conveyed by them to Henry S. McComb, and which was also afterward sold and conveyed by him to his mother, Mrs. Martha McComb, was thereby assigned and allotted in severalty to John McDowell and wife, by a line of seventy feet and one sixteen hundredths of a foot, instead of seventy-one feet and one sixteen hundredths of a foot, on the south side of Shipley Street in the city of Wilmington, it would, in law conclude and estop alike McDowell and wife, Henry S. McComb and Mrs. McComb, and all claiming or defending under them, or either of them, from setting up any claim or title to any other or longer line on the south side of Shipley street, as the boundary and extent

of the same thereon, than is stated in the description of the metes and bounds of it in the record of the proceedings and partition in that court; notwithstanding the deed from John McDowell and wife to H. S. McComb, calls for and describes it as a line of seventy one feet and one sixteen hundreths of a foot, instead of seventy feet and one sixteen hundreths of a foot, on the south side of that street, and also purports to convey, and does convey, all the right and title which they had at the time of the execution and delivery of it, in the real estate of Benjamin Boulden deceased, and his deed also calls for and conveys the same to his mother, Mrs McComb. Because the proceeding referred to in that court, not only purports to be a complete partition of all the real estate devised in the last will and testament of Benjamin Boulden to all the devisees mentioned, but to ascertain and describe with certainty and correctness the metes and bounds of each and all of the tracts of land, lots and premises embraced in it, so far as they are described and set forth in the record of it ; and, therefore, the partition and decree in that court was final and conclusive as to that matter, in this action, and could not be controverted or called in question in this, or any other collateral proceeding or inquiry in regard to it. A partition in Chancery is a proceeding *in rem* upon the land itself for the purpose of dividing and assigning and alloting it by actual and certain metes and bounds in severalty among the parties respectively entitled to such a partition of it, if practicable, and is final and conclusive on the parties to it and their privies in estate, and, therefore, it cannot be contradicted or denied, much less altered or varied by any kind of proof in any collateral action, proceeding, or inquiry concerning it in any other court.

But we do not consider upon the facts proved that the trespass alleged and complained of was characterized by any thing that could entitle the plaintiff, if your verdict should be in his favor, to recover damages greater than were actually sustained by him according to the proof.

The counsel for the defendants requested the court to note that they would tender a bill of exceptions to the charge.

The plaintiff had a verdict.