MEYER v. WEIGMAN.

1. **Evidence:** ADVERSE POSSESSION: BOUNDARY LINE. In an action to settle a boundary line between parties owning adjoining sections, where they stipulated that each was the owner in fee of the section he claimed, and where in the petition plaintiff claimed to own a division fence extending beyond the limits of his section, evidence tending to prove his adverse possession of the disputed area by the plaintiff for more than twenty years was admissible. ADAMS, J., *dissenting.*

*Appeal from Clayton District Court.*

TUESDAY, APRIL 17.

THIS is a suit in equity to ascertain and settle the boundary line between lands owned by the plaintiff and other lands

owned by the defendant. It is alleged in the petition that plaintiff is the owner in fee simple of certain subdivisions of lands, which are particularly described; that said lands have been held in the open, actual, continued, and uninterrupted possession of the plaintiff, and those under whom he claims, for more than twenty years next preceding the commencement of this suit, and during said time a fixed and permanent division fence has been kept up and continued unchanged along the south line, as and for the south line of section twenty-five; that defendant owns, or claims to own, the northwest quarter of section thirty-six, adjoining the land of the plaintiff on the south, and that in November, 1870, the defendant took forcible possession of a part of plaintiff's land, and now holds possession thereof, claiming it as a part of section thirty-six. The prayer is that the boundary line between plaintiff's and defendant's lands be established, under the direction of the court.

The answer denies the allegations of the petition not admitted, and alleges that defendant is the owner of the northwest quarter of section thirty-six, and that the true boundary line is that known as the Peck line, being the line along which the fence of the defendant was built. It is further alleged in the answer that the old fence along said northern boundary (being the fence claimed by plaintiff as the boundary) was crooked, and was not regarded by plaintiff and those under whom he claims, or by defendant, as the true boundary line of said tract, and that the true line was sought and found by mutual agreement of plaintiff and defendant, and that without objection defendant built his fence upon said line, where it now stands.

The case was referred by consent of the parties. The referee reported that the plaintiff and those under whom he claimed had held adverse possession for more than twenty years up to the line known as the Keeler and Whitman fence line, and that, wherever the original section line may have been, plaintiff was entitled to hold to the said fence because of his adverse possession. There was a decree in accordance with the report of the referee and defendant appeals.

*Hatch & Frese, W. E. Odell* and *Woodward & Preston,* for appellant.

*James O. Crosby,* for appellee.

ROTHROCK, J.—I. Pending the hearing before the referee, and after the introduction of some evidence upon the part of plaintiff, the certified abstract of the entry of plaintiff's land was introduced in evidence, whereupon the parties agreed that the plaintiff owned in fee simple the east half of the southwest quarter, and thirty feet wide along the south side of the west half of said quarter to the Dubuque road, of section 25, 94, 4, and that the defendant owned in fee simple the northwest quarter of section 36, 94, 4.

1. EVIDENCE: adverse possession: boundary line.

It is urged by appellant that under the pleadings and this agreement no evidence as to an adverse possession was admissible, and that the only issue between the parties was as to the true line between the sections as established by the government survey. It seems to us that under the allegations of the petition, fairly construed, the plaintiff claimed to hold to the fence alleged by him to be the boundary line. Under no other construction can any force be given to the claim of adverse possession. He avers that this fence was kept up and maintained as and for the south line of section twenty-five. He does not allege that it was in fact upon the line established by the government survey. The allegation that he was the owner of certain sub-divisions of land was denied by the answer, and when it became necessary to prove his record title and he introduced the first item of evidence, the agreement as to title in both parties was made, not, as we assume, for the purpose of adjusting any right claimed, but only to obviate the necessity of formal proof of what neither party really disputed. We think, upon the whole record being considered, the agreement should have no greater effect than this. The parties before and after the agreement introduced evidence as to the location, continuance, and permanency of the partition fence claimed by plaintiff as his boundary, and evidence as to the possession of the plaintiff up to the fence.

On the trial the plaintiff sought to prove that the fence was upon the true line between the sections, and in addition thereto that he was entitled to hold to the fence because of adverse possession, wherever the original line may have been.

II.   We think the evidence as to the possession by the plaintiff up to the fence claimed by him as the boundary between the parties, and the adverse character of such possession, fully sustains the report of the referee and the decree of the court below.   The case as made comes squarely within the rule announced in *Brown v. Bridges,* 31 Iowa, 138.

AFFIRMED.

ADAMS, J., *dissenting.*—In this case the defendant holds the patent title to the NW. ¼ of section 36, 94, 4, and the plaintiff holds the patent title to the land in section 25, immediately adjoining said section 36 on the north.   The question submitted to the court was as to the location of the line between them.

. A fence had been built, called the Keeler and Whitman fence.   The plaintiff claimed that that constituted the line between the parties.   The defendant claimed that the fence was on his land and that the line between them is several feet farther north.   The case was referred to a referee, who, after taking a large amount of testimony in regard to surveys, occupancy, etc., reported in favor of the plaintiff; but he found (or says he would find if compelled to rule on the question) that the north line of section 36, as surveyed by government, was north of the Keeler and Whitman fence, and was in accordance with the survey known as the Peck survey. The court below confirmed the report, and rendered a decree establishing the line of the Keeler and Whitman fence as the section line between sections 25 and 36.   In thus decreeing the court acted upon the theory expressed in the brief of the plaintiff's counsel, which is that section lines can be changed by adverse possession.   He says: " It (the line of occupation) becomes the section line by such user, and that is the claim made in the petition.   If it were not originally by the survey

section 25 as far south as the line of occupation, such occupation makes it section 25."

This statement cannot be admitted as correct except in a very narrow sense. Where there is no better evidence as to where the section line, as surveyed by the government, is, the maintenance of a division fence as a section line fence by the owners of the respective sections might be regarded as some evidence of the location of the line as surveyed. The value of such evidence would depend, among other things, upon the length of time the fence had been maintained as a section line fence, and the greater or less correspondence with other lines recognized as section lines. A section line established upon such evidence might, in fact, differ somewhat from the line as originally surveyed. But that is not the theory. The theory is, not that a new section line has been established, but that the old one has been found.

If a person claims that the division line between him and his neighbor has been shifted, by reason of his having held adversely, for the statutory period, a portion of his neighbor's land, he has no occasion to demand that a section line should be regarded as shifted and bent so as to comprehend the land in question under some denomination that would seem to make his possession not adverse.

To the decree of the court below there is a valid objection. To allow new section lines and corners to be established by decree of court, confessedly different from the government section lines and corners, would in the course of time work great mischief by introducing ambiguity and confusion into deeds and other instruments affecting real estate. It is of the utmost importance that the words *section line* and *section corner* should have but one meaning, and should be regarded, in theory at least, as stationary and not migratory.

We need no better case than the present to illustrate the trouble that will be caused. By the decree a new section corner has been established; yet there is nothing in the decree to indicate that it is a new one. There is not a word in the decree about adverse possession, or the basis of the action of the court. Any one in examining the decree would naturally

infer that the line of the Keeler & Whitman fence was found to be the government line.   The consequence is that a disturbing element has been introduced into the lines of that neighborhood, and no one can foresee the trouble that may result.

Upon the subject of decreeing a new section line after the government line was found the majority opinion is silent.   It is to be inferred that it is regarded as a matter of indifference whether the line of the Keeler and Whitman fence is decreed to be the section line between sections 25 and 36, or simply the division line between the parties.   It appears to be thought that if the decree is not right in terms, it is in effect, and so ought to be affirmed.   This leads us to consider whether it can be under the petition, and especially under the petition and stipulation to which reference has been made.   I think it cannot.   It gives the plaintiff more land than he avers that he is entitled to.   The plaintiff's averment is " that he is the owner of the E. ½ of SW. ¼ and W. ½ SE. ¼ of section 25, 94, 4, and also a tract commencing at the SE. corner of the W. ½ of SW. ¼ of said section, thence west to the Dubuque road, thence north 30 feet, thence east to a point 30 feet north of the starting point, thence south 30 feet, which said premises have been held in the open, actual, continued and uninterrupted possession of the plaintiff and those under whom he holds for more than twenty years next preceding the commencement of this suit, and during said time a fixed and permanent division fence has been kept up and continued unchanged along the south line as and for the south line of said section 25."

The majority of the court claim to find in the foregoing an averment in substance that the plaintiff has occupied adversely south of the south line of section twenty-five, to-wit: a part of section thirty-six.   To my mind the language used will bear no such construction.   On this point the language of the majority opinion is: "It seems to us that under the allegations of the petition, the plaintiff claimed to hold to the fence alleged by him to be the boundary line."

The land which the plaintiff says he held adversely he speaks of as " which said premises," referring to premises which he had described in the same sentence as being wholly in section

twenty-five. It is not for us to make the petition speak a different language from what it bears, but such seems to me to be the effect of the majority opinion.

To determine whether that is the effect, we will suppose that the defendant had admitted the allegations as above quoted from the petition, and will suppose also that the location of the government line was undisputed. What decree then should have been rendered as to the establishment of the boundary line? No other line could have been established than the government line. If the petition is admitted the decree will follow it of course, and no other line could possibly be described from the petition than the government line. This will not be denied. It follows, then, that in the opinion of a majority of the court the plaintiff is entitled to a more favorable decree, on the point of adverse possession, than if his petition on that point had been admitted.

This results from construing the petition not by its own terms, but with reference to the evidence. It is said in the majority opinion: "Under no other construction can any force be given to the claim of adverse possession." Plaintiff avers that he has held adversely certain land in section 25, amounting to a little more than a quarter section. Now the majority of the court say, virtually, that as it appears that he held the undisputed patent title to said land, the petition must be construed as meaning not that he held the adverse possession of that land as he says he did, but of a part of section 36 which he says nothing about.

A stipulation has been referred to as relied upon by the appellant. The part with which we are concerned is in these words: "The defendant, Henry Weigman, owns in fee simple the northwest ¼ of section 36, 94, 4." The appellant claims, and I think very properly, that that is an agreement that the defendant is the owner of the whole quarter section, and that the only question to be litigated was as to the location of the line between it and section 25. I do not think that we are permitted to go outside of the stipulation to construe it. But, if I should do so, I should come to a different conclusion from that of the majority of the court. In construing it they refer

to the fact that, after it was made, evidence was introduced in relation to adverse possession. It is true such evidence was offered by the plaintiff and admitted by the referee, but it was against the objection of the defendant.

Besides, the plaintiff's theory was that adverse possession would change the location of section lines; that if the land in controversy was not originally in section 25 it is now; and that, he says, is the claim made in the petition. The decree also is based on the same theory. That accounts, I think, sufficiently for the plaintiff's willingness to be governed by section lines, and for the manner in which the trial was conducted on his part. I see no reason why the stipulation should be construed as containing an exception of so much of section 36 as lies north of the Keeler and Whitman fence.