SANFORD BAKER v. WILLIAM McARTHUR AND ARCHIBALD McARTHUR.

*Boundaries—Surveys and re-surveys—Proofs.*

1. Two official surveys having resulted differently the question in ejectment was the real location of a section line. *Held*, proper to show that a surveyor who had helped to run the original line, had again run it in laying out village lots, while the corner-post and witness-trees were still standing; and that afterwards a grantee had built a fence along the line so run, and this fence was understood in the neighborhood to indicate that line.

2. A re survey was had when the evidences of the original survey had nearly disappeared, and a question afterwards arose as to where the true line was. The boundaries of property conveyed before the resurvey were not to be disturbed. *Held*, proper to show that lots had

been laid out and buildings put up with reference to the line as established by the first survey, and that it had been shown by a recent survey that the line as run by the re-survey would cross lots and bisect buildings.

3. Disregard of the evidences furnished by fences, buildings and common repute, as to the true location of a surveyed line would justify granting a new trial in ejectment.

4. Old surveyed lines which have become uncertain are not to be superseded by new ones, but are to be ascertained by a re-survey, if rights have become fixed and regulated in reliance upon the common understanding as to where they lie.

Error to Cheboygan. (Ramsdell, J.) April 17.—June 18.

EJECTMENT. Defendants bring error. Affirmed.

*Bell & Adams* and *C. I. Walker* for appellants.

*Humphrey & Perkins* and *D. C. Holbrook* for appellee. A line may be fixed as a boundary by acquiescence and proof may be given tending to show acquiescence: *Dupont v. Starring* 42 Mich. 492; *Diehl v. Zanger* 39 Mich. 601; *Joyce v. Williams* 26 Mich. 332; *Smith v. Hamilton* 20 Mich. 433; *Stewart v. Carleton* 31 Mich. 270; *Van Den Brooks v. Correon* 48 Mich. 284: 3 Washb. R. P. 350; *Nixon v. Porter* 34 Miss. 697; in fixing a boundary it may be shown that a particular line would conflict with well-established lines: *Hobbs v. Outlaw* 6 Jones (N. C. L.) 174; the original survey governs and subsequent ones are only to find where the original lines were run and corners located: *Lindsey v. Hawes* 2 Black 554; *Britton v. Ferry* 14 Mich. 53; *Case v. Trapp* 49 Mich. 61; *Gregory v. Knight* 50 Mich. 63; *May v. Baskin* 20 Miss. 428; *Buel's Lessee v. Tuley* 4 McL. 268; *Robinson v. Moore* 4 McL. 279; *Thomas v. Patten* 13 Me. 329; *Hall v. Davis* 36 N. H. 569; *Ripley v. Berry* 5 Greenl. 24; *Norris v. Hamilton* 7 Watts 91; *M'Iver v. Walker* 4 Wheat. 445.

SHERWOOD, J. The plaintiff brought ejectment to recover a parcel of land, "commencing at a point on the west bank of the Cheboygan river twenty-five rods northerly along said river from the intersection of the south line of said section twenty-nine with said river; thence westerly and parallel to said south section line of said section twenty-nine to the

west section line of said section twenty-nine; thence north along said section line three rods; thence east and parallel to said south section line to the Cheboygan river; thence southerly along said river three rods, more or less, to the place of beginning." The parcel lies in the village of Cheboygan, between Main street and the river, and about twenty feet on the former and thirty-six feet on the latter, and is the south-west part of the south-west fractional quarter of section twenty-nine, according to the original survey made by James H. Mullett, and which fractional quarter was entered by Jacob Sammons in March, 1846, and by him platted into village lots, and laid out into the village of Cheboygan in 1851. The village plat was surveyed and laid out by one Whicher, who assisted Mullett in making the survey of 1840.

It is admitted that the description purchased by Sammons of the government covered all of section twenty-nine west of the Cheboygan river; that it is in town thirty-eight north of range one west; that under the Mullett survey the corners of sections twenty-nine, thirty, thirty-one and thirty-two were marked, and a meander stake set up on the lake shore, and that said fractional quarter was represented on the survey plat as containing fourteen and 85-100 acres.

Both parties claim under common grantors. In 1855, under an order from the General Land-office, for some reason not appearing in the record, Harvey Mellon was instructed to make a re-survey of the township, but was not to make any changes in the Mullett survey where property had been previously sold; and was required to respect all corners made by Mullett when sales had been made. Mellon could find no evidence of the Mullett survey except the quarter stake and the meander stake set by Mullett on the lake shore. A plat of each of the surveys was introduced in evidence on the trial. The Mellon plat describes the fractional part west of the Cheboygan river as lot number three, and makes it contain twenty-five and 38-100 acres, instead of the amount stated in the Mullett plat. On the sixth of October, 1866, four persons, including the defendant William McArthur,

conveyed to the plaintiff and one Patterson the south part of said lot three, (according to the Mellon survey,) it being twenty-eight rods' on the Cheboygan river, and extending westerly the width across the whole of said lot. It is under this conveyance that the plaintiff seeks to recover, and it is admitted that the title to this piece of land described was in the plaintiff, the only question being as to the proper location,—where was the south line of this parcel?

It is substantially admitted that, if the Mullett survey is to control, the plaintiff must prevail; if not, then the defendants are entitled to a new trial. The south line of section twenty-nine, as established by the Mullett survey, thus becomes of great importance in the case. It appears by undisputed testimony that the Mellon south line was several rods south of the Mullett line, and the question finally narrowed down to the question, which line was intended when the conveyance was made. There was some evidence tending to show that a fence had for many years marked the Mullett line; and while the designation made was that contained in the Mellon survey, the Mullett boundaries were those really intended, and this fact went to the jury and their verdict is against the defendant. It only remains to ascertain whether any error was committed by the court in taking the testimony, and placing it before the jury with proper instructions.

We have examined the record carefully, and the assignments of error in detail, and are unable to discover any erroneous rulings or charges by the circuit judge. It is not claimed by the defendant that the Mellon survey was intended to or did carry the south line of the parcel in dispute south of the south line of section twenty-nine, or the east line of said parcel east of the east line of said section; and so long as such is the fact, it can make no difference whether the parcel is called " lot number three " or " the south-west part of the south-west fractional quarter of section twenty-nine." It is the south twenty-eight rods of the fraction that is in question.

It appears from the testimony that Whicher made a sur-

vey of the south line of section twenty-nine when he laid out the village in 1851, and that in so doing he started from the corner of sections twenty-nine, thirty, thirty-one and thirty-two, and at the time the corner-post, with the witness trees as established by the Mullett survey, was standing ; that very soon thereafter a fence was built by Sammons, who entered the land on said south line of section twenty-nine ; and that it had always remained there.   We think the testimony offered tending to show these facts was entirely competent and quite important.   Whicher assisted in running the Mullett line between the section corner and the meander post on the lake shore, and ran it again himself when the village was laid out.   We further think that the old fence placed upon that line when built was understood among the neighbors, who had always known it as indicating that line, and testimony of the fact was proper.   In many cases it is the only evidence existing of original surveys.

It quite satisfactorily appears that buildings had been erected and lots laid off in the village of Cheboygan with reference to and regarding the south line of section twenty-nine as shown by the Mullett survey.   Gen. Duffield had made a recent survey of the premises, from which it appears that said south line as Mellon ran it, and which the defendants claim to be the correct one, would cross village lots and pass through buildings erected upon them.   This testimony was objected to as incompetent.   We think the testimony was not subject to the objection taken.   It is competent to prove that a line run in a particular place will disturb and conflict with ancient and well-established boundaries of other tracts, which necessarily determine the line to be ascertained, in order to repel the conclusion that the former is the true line in question.

It is clear that the south line of both the Mullett and Mellon surveys was the south line of section twenty-nine ; and the only question of importance in the case, as we have said, was, where was this line ?   The former was fixed and established by stakes, witness trees, and other monuments, which existed, as the testimony shows, and were well known when

the village of Cheboygan was platted and built up, and none
of which could be found when the Mellon survey was made.

We think the jury were well supported in their finding
upon the testimony, and that a different finding would have
furnished good ground for the trial judge to have used his
discretion in granting a new trial.

By the Mellon survey the south boundary line of section
twenty-nine would be removed several rods south of the line
where it has always been regarded as established, and by
which rights of parties have been fixed and regulated for
years.    In such cases the old lines are to be ascertained by a
resurvey, and not new ones established.    The testimony in
this case tends to show such to have been the object of the
government in making the Mellon survey.    It appears,
however, this was not done, and when it is not, the mischief
of unsettling boundaries which have been generally accepted
and acted upon usually follows, and this is always to a greater
or less extent injurious, and will not be looked upon with
favor by the courts, whose duty it is to protect the rights of
parties interested against the unlawful encroachments of
parties claiming under such resurveys.

The charge of the court[1] in this case was well considered,

[1] The court, in charging the jury, among other things, said:
1. In this action both parties claim under a common grantor.    The
plaintiff claims to have purchased of the grantor of the defendants a
piece of land described as the south part of lot 3, in section 29, town 38
N., range 1 W., 28 rods front on the left bank of the Cheboygan river,
and the same width westerly, across the whole of said lot, and claims
that the defendants are occupying a strip about 36.30 feet on the river front,
across the north end of the land thus described, and about 19.80 feet on
Main street, Cheboygan village.
2. The defendants admit the title of the plaintiff to the land described
in the deed, but deny that it covers a strip on the north 36.30 feet wide
on the river, and 19.80 feet on Main street, occupied by them, or any
other property occupied by them.
3. The rights of the parties must be determined by the location of the
section line on the south side of section 29.    To entitle the plaintiff to
recover, he must prove to your satisfaction, by a clear preponderance of
proof, that the section corner of 29, 30, 31 and 32 was at the point where
he claims it to have been.    In the absence of any satisfactory evidence
of any monuments being established by the original survey, like a section-
corner stake or meander stake, or if such stakes were established, and
the plaintiff is unable to prove just where they were established, you
will be governed by the courses and distances of the original survey in
fixing the southern boundary of section 29.

and covered all the legal points necessarily involved in the case, and we do not deem it necessary to consider further the questions raised in the charge and refusals to charge, as we are all satisfied no error was committed by the circuit judge.

The judgment must be affirmed.

The other Justices concurred.

---

## THOMAS H. McGRAW v. GERMANIA FIRE INSURANCE COMPANY.

*Fire insurance—Agency to obtain policy—Proofs of loss—Private examination on oath—Cancellation.*

1. Where proofs of loss were made by an agent of the assured the latter, in a suit upon the policy, in which the proofs were introduced without objection was properly allowed to testify that he had given the agent authority to act in all respects as he himself would, with reference to the proofs.

2. Where a fire insurance policy requires proofs of loss to be made out

---

4. To establish his claim the plaintiff has introduced testimony for the purpose of showing where the original section corner established by Mullett in the first survey was located. If the line established by Mullett in his first survey can be determined by you, that line will determine the right of the parties in this case. If you find from the evidence in this case that the Mullett line drawn from the quarter post between sections 30 and 31 east to the river bank strikes at the point claimed as the point where a meander post stands, and its course intersects a point claimed as the section corner, then the plaintiff will recover.

5. The question of whether the Mullett line was run at all or not has been raised by the defense in this case, and it is for you to consider. The field-notes, the minutes and plats of government surveyors, as returned by them to the land department, are evidence of the surveys having been made, but they are not conclusive evidence of that fact, and if upon an examination monuments are generally found wanting, as described in the field-notes, it casts a suspicion upon the accuracy of the field-notes, or the truthfulness of the return of the government surveyor. You will determine from the evidence in this case, as it has been presented to you, whether or not a line was ever surveyed through here by the original surveyor, and if you find that there was no such line ever surveyed by him, then, for the purpose of this case, the Mellon line will prevail, and in that case the plaintiff could not recover; but if you find that there was a line surveyed through here by the original surveyor,

| | |
|---|---|
| 54 | 146 |
| 86 | 79 |
| 54 | 145 |
| 92 | 496 |
| 54 | 145 |
| 101 | 51 |
| 54 | 145 |
| 108 | 104 |
| 54 | 145 |
| 127 | 468 |
| 127 | 473 |
| 54 | 145 |
| s19NW | 927 |
| 129 | 323 |
| 54 | 145 |
| s19NW | 927 |
| 130 | [2]566 |
| 54 | 145 |
| s19NW | 927 |
| 132 | 227 |
| 54 | 145 |
| 142 | [2] 37 |

and sworn to by the assured before he can realize upon the policy, such proofs are a condition precedent; and *it seems* that the assured must make them out himself or show good reason for not doing so and for leaving them to be made out by an agent. And in a suit upon the policy the plaintiff has the burden of proof that the case is within the exceptions to the rule which requires the proofs to be made out by the person assured.

3. A ruling is presumed to have been supported by evidence if all the evidence does not appear in the record.

4. A stipulation in a fire insurance policy that the assured, in case of loss, shall, *if required,* submit to a private examination, is, if valid at all, so clearly opposed to the general policy of the law that no intendments will be made in pursuance of it; and where the assured person or his agent was notified that the company *desired* such an examination the letter containing such notification was properly excluded from evidence, as it was not in strict accordance with the stipulation.

5. Testimony as to what was done with reference to cancelling a fire insurance policy was properly excluded in an action on the policy where the premium was not returned until the loss actually occurred.

6. A person applied for insurance to certain agents. The latter could not place the whole amount in companies which they themselves rep-

---

Mullett, then you will undertake to find from the evidence in this case where that line ran.

6. It appears that in the year 1851, some 11 years after the original survey, a man by the name of Whicher made a survey and laid out a village plat, and it is claimed on the part of the plaintiff that that survey, having been made at an early day, and so shortly after the government surveyor had completed his work, such plat should have greater weight with you than that of any subsequent surveyor. If you find that at the time the Whicher survey was made these government monuments existed, or that at that time there were a greater number of government monuments and marks than there were at the time the subsequent surveys were made, then it may be entitled to have greater weight with you; but if no more monuments existed at that time than at the time of the subsequent survey, then its antiquity will give it no greater weight than that of the subsequent survey.

7. It is claimed on the part of the defense that in the absence of any monument, as section corners or meander stakes upon this line, then that the true method of finding the line is to commence west at the corner between sections 31 and 30, running the line to the quarter post, which is an established monument, taking that course and then projecting that line past the east line of section 31, would form the line, the southern boundary of section 29; that it would be established. In this view of the case I do not fully accord, and while you will take that into consideration as to whether or not that line should be projected in that manner, yet lines are so frequently changed in direction from one government monument to another, that it is not conclusive evidence as to where the Mullett line was run.

8. It is also claimed on the part of the defense that in the absence of any monument being found, and in the absence of your being able to determine where those monuments were originally located, then a line

resented, and went therefore to another agent from whom they obtained the rest, making certain verbal representations to him as to the condition of the property to be insured. The assured had nothing to do with these negotiations. *Held*, in an action on a policy thus obtained at second hand, that the persons obtaining it were agents of the insurer rather than of the assured, and that their verbal representations, if false, could not avoid the policy.

Error to Bay. (Green, J.) April 22.—June 18.

Assumpsit. Defendant brings error. Affirmed.

*Hanchett & Stark* for appellant.

*Isaac Marston* for appellee.

---

drawn from the known monument west the quarter stake between 30 and 31, to the section corner between 25 and 36 on the east line of the township, would form the true line bounding the south of section 29. This would be but to magnify the possible errors that I have mentioned that might occur in running the line in accordance with the direction of the section corner on the west to the quarter post, and would not be a safe guide to go by.

9. The statute prescribes the manner in which lost interior corners should be found. In this case none of the surveys conformed to the requirements of the statute in finding these corners.

10. The section corner in question may be determined by the evidence of men who knew where that section corner was; but in determining whether they knew the fact as to where the section corner was, you will take into consideration their means of knowledge, the length of time that has transpired since they observed it, and their liability to be mistaken as to the true section corner, where two corners have been established, one the original and the other the re-survey.

11. It is claimed on the part of the plaintiff that the defendants having platted a portion of the village of Cheboygan upon the lines surveyed by Whicher, is evidence to be considered by you that the Whicher line is the true section line as surveyed by Mullett. Upon this point, gentlemen of the jury, I charge you that the platting of the village of Cheboygan by these parties does in no way govern or control the rights of these parties in this suit, as it does not affect the property in question.

12. If you find that the section line of Mullett is on a line with what is claimed is the meander post on the margin of the Cheboygan river, the plaintiff is entitled to recover.

13. The question for you to determine in this case is, where was the Mullett line, if such a line was ever run; and where that is found, the rights of the parties in this case are determined by you.