THOMAS COY v. CHRISTIAN MILLER.

[FILED FEBRUARY 10, 1891.]

1. **Boundaries**: ACQUIESCENCE: PRESUMPTION. Where a corner supposed to have been established by the government in the surveys of public lands has been acquiesced in by adjoining owners of such lands for nearly ten years, and improvements made and the land broken up to the line thus established, there is a presumption in favor of such corner being the true one, which can only be overcome by clear proof that it was not established by the government.

2. ———: PROOF, *held,* insufficient to sustain the verdict.

ERROR to the district court for Phelps county.     Tried below before GASLIN, J.

*Dilworth, Smith & Dilworth,* and *Hall & Patrick,* for plaintiff in error, cited : *Johnson v. Preston,* 9 Neb., 474; *Morrison v. Neff,* 18 Id., 134; *Marsh v. Mitchell,* 25 Wis., 706.

*James I. Rhea,* and *W. S. Morlan, contra,* cited : *Jones v. Kimble,* 19 Wis., 430; *Moreland v. Page,* 2 Clarke [Ia.], 139; *Johnson v. Preston,* 9 Neb., 475–6.

MAXWELL, J.

This is an action of ejectment brought by the defendant in error against the plaintiff in error to recover the possession of certain real estate.

It is alleged in the petition that the plaintiff has a legal estate in and is entitled to the possession of the following described piece of land off of the west side of lots numbered 11 and 14 in section 30, township 5 north, range 17 west, of the 6th P. M., situated in Phelps county, in the state of Nebraska, and bounded as follows, to-wit: Beginning at the southwest corner of said lot numbered 14 running thence north on the line between lots numbered 14, and 15 and 11 and 10 in said section 30 forty chains and forty-two and one-half links to the northwest corner of said lot numbered 11, thence east five rods, thence south forty chains and forty-five links on a straight line to a point on the section line between sections 30 and 31 in said township and range, about eleven rods east of said southwest corner of said lot numbered 14, known as the Coy corner; thence west eleven rods on said section line to the place of beginning, containing in all eight acres, more or less."

On the trial of the cause in the court below a verdict was returned in favor of Miller, upon which judgment was rendered.

The real question in controversy is the location of the government corner on the north line of section 30, which divides the plaintiff's land from that of the defendant.

One John A. Jacobson was called as a witness on behalf of the defendant below and testified as follows:

A. In 1872 I went over the land.

Q. Where were you living at that time?

A. In Harlan county.

Q. Did you ever see a corner at the corner of Coy's place?

A. I saw a pile of dirt thrown up there in 1872—I drove by there—I did not know it was a corner.

Q. Was there a road running by there?

A. Yes, sir; from Orleans to Kearney.

Q. On which side of that pile of dirt that you saw did the road run?

A. On the north and west of it.

Q. How far from it?

A. Ten or twelve rods.

Q. Do you know where the corner is now that Coy claims?

A. Yes, sir.

Q. Was the pile of dirt that you saw in the same place?

A. Yes, sir, about, I think.

Q. When did you next see that corner?

A. In 1876, I passed and noticed it about the same.

Q. When did you next see it?

A. I saw it then after Sacramento started; they turned the road then and went right through the corner.

Q. Show the way it run on this piece of paper. (Witness draws the line of road on paper.)

A. In 1878 Sacramento started and they turned the road up this way and went around the corner, and the wagon wheels went right into the holes; there were four

holes, I think, three any way, and a pile of dirt in the center.

Q. Grass grown over them?

A. No, sir.

Q. State if any one was living around there in 1872.

A. No, sir.

Q. Anybody living on this land on which Coy lives now?

A. No, sir.

Q. Any land taken around there at all?

A. No, sir.

Q. You came there about the same time Nels Johnson came there?

A. Yes, sir.

By a juror:

Q. Did the corner look any larger the last time you saw it than the first time?

A. I think not, because the grass had grown up some.

Q. Could you see other government corners around there then?

A. We could on the county line; they were plain.

Q. Where did you see corners on the county line?

A. One corner right south of the Coy corner.

Q. What section did you live on in Harlan county?

A. On section 2.

Cross-examination:

Q. How plain was the road you traveled on in 1872?

A. Pretty plain.

Q. How close to the Harlan county line were these mounds?

A. Well, I don't remember.

Q. How many mounds did you see on the way to Kearney?

A. I don't know.

Q. Did they not pile up dirt to mark the road there?

A. I don't know; they did that in the sand hills.

Q. When were you first at Coy's house?

A. I was there when he was digging the cellar.

Q. How far did this road run west of his house?

A. Not far; couple of rods, perhaps.

Q. How far north of his house?

A. Perhaps the same distance.

Q. When the grass was burned off in 1872 you could see a long ways?

A. Yes, sir.

Q. Were you close enough to this corner to see if there were any stakes?

A. No, sir.

A number of other witnesses, who had seen the corner in question prior to the settlement of that portion of the state, testified to substantially the same facts as Mr. Jacobson. The plaintiff and defendant themselves recognized this as a government corner, and cultivated their lands with reference thereto, leaving a public road along the line which passed over this corner.

The land on the strip in controversy was broken up by Mr. Coy, with Mr. Miller's knowledge, if not consent. A considerable number of trees were set out on the strip which, at the time of the trial, were several years old. He had also dug a well thereon and made other improvements, all with Mr. Miller's knowledge and without objection. In 1878 a surveyor was called who testifies in substance that he found the corner as claimed by Coy; that the field notes showed that the corner was more than two rods out of place; that if *he* had established a corner from the field notes he would have established it according to measurement, but that the corner, although not agreeing with the field notes, he regarded as the government corner. To offset this testimony, a surveyor, shortly before the bringing of the action, had made a survey and located the corner eight or nine rods within the lands claimed by Coy, and

thereupon this action was brought to recover the land which it is claimed belongs to Miller. The field notes were introduced, showing clearly that a corner had been established by the government surveyors at the division line of the lands now owned by the plaintiff and defendant.

A witness was called on behalf of Miller who testified that when the survey was made in 1878 no corner was found at the point in controversy but that the surveyor established the corner. One or two other witnesses testified to substantially the same facts. The clear weight of testimony, however, shows that the corner as it existed when Coy and Miller settled upon the land in question is the true government corner. This corner was acquiesced in for nearly ten years by all parties interested in the property, and a division made on that line seems to give to both the plaintiff and defendant all the lands they purchased.

The question involved is one of fact, but the acquiescence for so many years of the people interested in the corner as it existed when the country was settled is a strong circumstance tending to show that there is but little cause of complaint. Under this state of facts the presumption in favor of its being the original location cannot be overturned except by clear proof that it is not the original corner. Such proof is not found in the record in this case, hence the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.