## ARNESON V. SPAWN.

1. Where the question is as to the true location of a government corner, and whether a certain mound, pits, and stake, testified to by witnesses, were the original marks of such corner, it is not error to admit evidence to show that such marks were years before, when they very plain and distinct, generally regarded and recognized as indicating the original government corner; and to that end it may be shown that permanent improvements, as lines of trees, roads, buildings, public and private, were, when such indications were plain and visible, located with reference thereto as the true government corner, by persons who had no other interest than to locate them correctly.

2. Where a written document or paper is offered in evidence, and its exclusion assigned as error, such rejected writing should be printed in the abstract, or its contents, or the facts upon which its competency depends, so particularly described as to fully inform this court of all the material facts upon which the trial court made its ruling. Otherwise no error is shown, and the ruling of the court below will be presumed to be correct.

3. It is not error for the trial court to withhold from the jury confessedly good law, when the same is not applicable to the questions before the jury on the evidence in the case.

4. The survey of the county surveyor, which under Section 689 *et seq.*, Comp. Laws, carries the presumption of correctness, is the survey made, authenticated, and recorded as therein provided. Parol evidence of the acts of such surveyor does not take the place of his official report, nor support the same presumption.

5. If the original corners, as established by the government surveyors, can be found, or the places where they were originally so established can be definitely so determined, such location must control, without regard to whether they were located with mathematical correctness or not.

6. In determining whether the landlord or tenant, or both, may recover damages for injury to real estate, the general rule applies that wherever a legal right is violated the owner of such right is entitled to action therefor. If possession only is disturbed, the owner of the right of possession may have his action. If the freehold itself, independent of and beyond its use and enjoyment by the tenant, is injured, the owner of the freehold, in like manner, has his action.

7. In this state the owner of real estate in the actual possession of a tenant may maintain an action for permanent injury thereto.

8. When defendant planted a fence across a portion of plaintiff's farm, thus cutting it off and attaching it to and enclosing it as a part of this (defendant's) farm, claiming and taking possession of the same as his own, thus initiating a possession adverse to the plaintiff, which, unresisted, would ripen into a prescriptive title, the plaintiff may, although the premises are in the actual possession of a tenant for a definite term, maintain an action for injury to the estate.

9. In such case it is not required that the complaint shall state .explicitly that plaintiff's interest is that of a reversioner, or that the injury complained of is to such reversionary interest, where it does state that plaintiff is the absolute owner in fee of the land, and also shows an injury which must necessarily affect the estate itself.

(Syllabus by the Court.  Opinion filed October 20, 1891.)

Appeal from circuit court, Minnehaha county.

Action by Ellen E. Arneson against Lewis Spawn for trespass.  Verdict and judgment for plaintiff.  Defendant appeals. Affirmed.

The facts are fully stated in the opinion.

*Davis, Lyon & Gates*, for appellants.

There can be no constructive possession of land in the actual possession of another.  Ruggles v. Sands, 40 Mich. 559; 8 Wait's Ac. and Def. 475.  A landlord out of possession cannot maintain trespass.  Lindenbower v. Bentley, 86 Mo. 515; Ullendorfer v. Saelgers, 50 Cal. 496; Tobias v. Cohn, 36 N. Y. 363. Wentworth v. Portsmouth & Dover R. R., 55 N. H. 540.  The statute, Comp. Laws, § 2780, giving right of action for injury to the reversion does not apply.  There were no allegations in the compliant of any injuries to the reversion.

A survey of land and marking a line and recording the survey is no evidence of any facts which go to make a title.  At most they are only evidence of a claim of title.  They are not even acts of possession.  Outman v. Fowler, 43 Vt. 462; Kidder v. Kennedy, 43 Vt. 717; Atkinson v. Patterson, 46 Vt. 750.

The statute makes a survey made by the county surveyor, a matter of record and competent evidence of the facts it contains.  Comp. Laws, § 690.  The original not belonging to the party offering the evidence, the certified copy was admissible. § 5308 Comp. Laws.

Field notes and records of the government survey, made by sworn officials and recorded in the proper office, are competent evidence under the provisions of Chapter 1, of Title 32, Revised Statutes of the United States.  They are competent evidence at common law, because they were the official acts of a public

officer. Whar. Ev. § 668. They were also admissible on the grounds that they were public matters, made before any controversy arose, by parties having peculiar means of knowledge, and no interests to falsify. Whar. Ev. § 185.

In testing lines in both directions, if the distances between known government corners overruns or falls short of the required distances the difference should be divided *pro rata* between the intervening sections. Jones v. Kimble, 19 Wis. 452; Mortz v. Williams, 67 Ill. 306.

The rule that in the construction of deeds, courses, distances and quantities must yield to natural or artificial monuments called for in the grant, is not inflexible, and it applies with less force to artificial than to natural monuments, and where there is anything in the description showing that the courses and distances are right, they will prevail. Baldwin v. Brown, 16 N. Y. 359; Higinbotham *et al.* v. Stoddard, 72 N. Y. 94; Moran v. Lezotte, 54 Mich. 90. When it is more reasonable to suppose that there is a mistake in placing the monument than in the courses and distances, the latter should prevail. Davis v. Ramesford, 17 Mass. 207; Shipp v. Miller's Heirs, 2 Wheat. 316.

*McMartin & Carland,* for respondent.

While a landlord out of possession could not maintain trespass at common law, he could always bring "an action on the case" to recover any damages done to the inheritance either by the tenant or a stranger. 1 Chitty's Plead. 139. Under the Code the plaintiff is only obliged to set forth the facts constituting his cause of action, and if under any form of action known to the common law he could have recovered then he can recover under the Code irrespective of the form of action. Pom. Rem. and Rem. Rights, p. 287; Fitch v. Gosser, 54 Mo. 270; Brown v. Bridges, 31 Ia. 145; § 2780 Civ. Code.

A person cannot lawfully go upon another's land without his permission, and he commits a trespass for so doing. Harrop v. Hurst, 4 Exchequer, 47. Where the infringement of a right might ripen into an easement or operate in derogation of the rights of another, it is a sufficient cause of action, though

no perceptible injury has been sustained. Wood v. Wand, 3
Exchequer, 772; Rochdale Canal Co. v. King, 14 Q. B. 138.
An injury to a right is actionable, though the damage is inap-
preciable. Delaware & Hudson Canal Co. v. Torry, 33 Pa. St.
149; Miller v. Spateman, 1 Wm. Saunders, 346; 1 Woods Addi-
son on Torts, p. 213; Battishell v. Reed, 18 C. B. 378; Kidgill
v. Moor, 9 Id. 378. If anything is done to destroy the evidence
of title, an action is maintainable by the reversioner. Young
v. Spencer, 10 B. & C. 145; Blanchard v. Baker, 8 Green-
leaf, 253.

The testimony of the witness Arneson as to setting out
trees and building of the school house, was competent and rele-
vant. After a party has made proof of a title to a tract of land,
the question of whether the tract includes the premises in con-
troversy is purely one of fact, and any evidence which tends to
solve this question is admissible. Porter v. Miller, 13 S. W.
1890; Lawrence v. Tennant, 15 Atl. 543; Leach v. Bancroft, 61
N. H. 411; Mills v. Penny, 37 N. W. 136; Yates v. Shaw, 24
Ill. 367.

As to what rules of law should govern the re-establish-
ment of lost corners, counsel cited McClintock v. Rogers, 11
Ill. 277; Yates v. Shaw, 24 Ill. 367; Colvin v. Fell, 40 Ill. 418;
Thomas v. Sayles, 63 Ill. 363; Martz v. Williams, 67 Ill. 306;
Irvin v. Ronamel, 68 Ill. 11; Almon v. Stevens, 68 Ill. 89;
Rinert v. Brunt, 21 Pac. 809; Shaffer v. Weech, 9 Pac. 202;
Moreland v. Page, 2 Iowa, 139; Randall et al. v. Gill, 14 S. W.
134; Walrad v. Flannagan, 39 N. W. 645.

KELLAM, P. J. The answer denied, but on the trial it was
conceded, that plaintiff was the owner in fee of the N. W. ¼ of
section 32, township 101, range 47, situate in Minnehaha county.
The facts alleged as plaintiff's cause of action are thus stated
in the complaint: "The defendant forcibly and unlawfully
broke and entered upon the plaintiff's said land; took down a
fence standing upon said land, removing the same; and also
then and there erected another fence on said land, thereby fenc-
ing in about twelve acres of said land, the property of plaintiff;
and also then and there disturbed the plaintiff in the use and

occupation of said land, preventing her from enjoying the same, and from receiving the rents, uses, and profits thereof, as she otherwise would have done, to the damage of plaintiff," etc. Defendant's answer was a general denial. It was admitted at the trial that the defendant had, prior to the commencement of the action, fenced in about thirteen acres of land which he claimed belonged to him,—a portion of the N. E. ¼ of section 31, township 101. range 47, for which, it was conceded, defendant held a patent. It will thus be seen that plaintiff and defendant, respectively, owned adjoining quarter sections of land, and the dispute between them was as to the true location of the corner which should be at once the northwest corner of plaintiff's land and the northeast corner of defendant's land, for that would determine the boundary line between them.

Upon the trial George Arneson testified that in June, 1884, he found the corner referred to, and particularly described how it was marked by mounds, pits, and stake, and the condition it was in; that he lived in that vicinity from 1873 until 1882 or 1883, and saw the corner "a good many times;" that he knew the location of the traveled road between the two quarter sections involved, and the east and west road on the north side of them; that these roads had been traveled since 1874; and that at the time of the trial they crossed or intersected each other, just where they did when he first saw them; and that he recollected when the school house was built and when other improvements were made about that corner. He then testified that lines of trees were planted along the east and west road and the north and south road in 1875, and were still standing; these lines of trees were on both sides of each road, about four rods apart; and that these lines of trees, so set, would correspond with the location of the corner, at the place where he had found it, as testified to and described by him; and that the line of trees running north and south opposite plaintiff's quarter (which would be defendant's quarter) were set by defendant, Spawn, in 1875. He also testified that the school house was built on the southeast corner of section 30, on a one acre

lot which "runs down to the corner," and that the corner was visible when the grounds were laid out and the school house built. (The southeast corner of section 30 would necessarily be the northeast of 31, and the northwest of 32, being the corner in controversy.) This evidence as to the location of the lines of trees and the school house was received over defendant's objection that the same was incompetent and immaterial, and as calling for the opinion of the witness as to what other parties did.

This evidence may not have been of great value, and its force may have been afterwards modified by defendant's (Spawn's) testimony that he set his trees hurriedly, and without reference to the corner; but they were circumstances which, unexplained, tended to show the understanding of different parties in that vicinity as to the location of the corner. These were improvements of a permanent character, made by parties who would naturally be interested in locating them correctly; and, being located with reference to a visible mound, the fact would tend very directly to show whether they then regarded such mound as the mark of the government corner. It must be remembered that in this case the first search must be for the corner established by the government survey, for that is conclusive, if found; and at this point the primary inquiry was, did the mound, pit, and stake testified to by the witness indicate such corner? The witness says these marks were plainly visible when these improvements were located. We think the fact that defendant, Spawn, and others made and located these improvements with reference to these visible marks was fair evidence to go to the jury as to the impression which these marks made upon these various persons as they then observed them, and not as they now remember them. Of course, no boundary rights would be concluded by such facts, but we think they were circumstances which the jury might properly know, and which might fairly help them in solving the question whether the mound, pits, and stake testified to by the witness did or did not constitute the government corner. It was perhaps somewhat of the nature of traditionary evidence, often re-

sorted to in the effort to establish ancient and obliterated land marks, and in this case tended, at least, to show that many years before, when these marks were more distinct and intelligible, they were recognized by the people living there, including the parties to the present controversy, as indicating the corner established by the government. Baker v. McArthur, 54 Mich. 139, 19 N. W. Rep. 923; Coy v. Miller, (Neb.) 47 N. W. Rep. 1046.

Cyrus Walts testified that he was formerly a surveyor, and had been locating government land 19 years; that in June, 1873, he ran the lines of section 29, and found the government corner of sections 29, 30, 31, and 32; that with reference to the roads the corner was right where they crossed each other; and his evidence as to the location of this corner. and the presence and appearance of the monuments indicating the same, tended to corroborate the testimony of the witness Arneson. The abstract says several other witnesses, without naming them, "testified, in relation to the corner claimed to by plaintiff, the same, in substance," as Arneson and Walts. It appearing from evidence introduced by plaintiff that he had leased the said N. W. ¼ of section 32 for a definite term, and at the time of the alleged wrongful acts the tenant in said lease was and still is entitled to, and was and is in the actual possession of, said premises, defendant moved to strike out all the evidence introduced by plaintiff, and to render judgment in favor of defendant, for the reason that the premises upon which the trespass is alleged to have been committed were then and still are in possession of a tenant under a lease. The refusal of this motion by the court is assigned as error, and will be considered later in this opinion.

The defendant introduced as a witness D. C. Rice, who testified that in November, 1888, he was county surveyor of Minnehaha county, and made the survey of said sections 30, 29, 32, and 31, at the request of several parties, naming them; and then offered in evidence "a certified copy of the report of D. C. Rice, county surveyor," which was objected to by plaintiff as incompetent, immaterial, and irrelevant, and not properly cer-

tified to " This objection was sustained, and defendant excepted. The paper thus offered in evidence is not given to us in the record, nor have we any means of knowing its contents. We do not know the substance or form of the certificate, nor how it was executed. Until error is affirmatively shown, the presumption is in favor of the ruling of the court "As the assignments of error cannot be considered without having before us the contents of the instruments so received, or so offered and rejected, and they are not here, there is nothing to sustain such assignments of error, and the presumption in favor of regularity must prevail." Blake v. Lee, (Minn.) 38 N. W. Rep. 487.

The same disposition must be made of the error assigned upon the refusal of the trial court to admit a book called "Field Notes," and presented by defendant. One of plaintiff's objections to their admissibility was that they were not properly certified to. Defendant then introduced "certificate authenticating these records," thus presenting the question of the sufficiency of the certificate. There is nothing in the abstract to inform this court of the contents of such certificate, nor by whom or how it was executed. A knowledge of these facts is indispensable in passing upon the question of its sufficiency. Under these circumstances it is not possible for this court to say whether these records were so authenticated as to entitle them to be admitted or not. Emerick v. Sloan, 18 Iowa 139; Craft v. Dalles City, (Or.) 27 Pac. Rep. 163. We think, under our practice, the rule should be that records, documents, or other writings, an understanding of which is essential to the appellate court in coming to a decision on the errors alleged, should be printed in the abstract, or their contents, or the facts upon which their competency depends, so particularly described as to give this court all the information which the trial court had; for only then can this court safely or properly express an opinion as to whether the trial court had erred or not. As announced by this court in Noyes v. Lane, 48 N. W. Rep. 322, the printed abstract, as agreed to by the parties or settled by the court in case of dispute, constitutes the record upon which a case is heard in this court; and appealing parties should see

to it that it contains everything necessary for the appellate court to know or consider in investigating and passing upon every question sought to be reviewed.

The report of Surveyor Rice having been excluded by the court, he (Rice) testified as "a witness for defendant," as to how he made the survey, who assisted him, what rules he followed as to courses and measurements, and where—not being able to find the government corner—he established the corner in dispute. At the close of the evidence defendant asked the court to instruct the jury "that the survey of the county surveyor is presumptively correct," and the refusal of the court to give this instruction is assigned as error. This proposition is, without question, the general law of the state, for it is made so by statute. Section 689, Comp. Laws. Whether the refusal of the court to give it to the jury as the law of this case was error or not depends upon whether there was any evidence in the case to which it could apply. It is not error for the trial court to withhold from the jury confessedly good law, where the same is outside of and not involved in the determination of the questions before it on the evidence in the case. The statute (Section 689 *et seq.*) prescribes with much detail under what circumstances and how the county surveyors shall make an official survey, what his report of such survey shall contain; and what shall be done with it after it is so made, "and said record shall be competent evidence in all courts of the facts therein stated." Section 690. When Section 689 says, "and his surveys shall be held as presumptively correct," we think it means his surveys made, authenticated, and proved as provided by the statute. When Rice testified as "a witness for defendant," his evidence did not take the place of his official report, nor did it carry the same presumption. It was simply the evidence of a witness. Its probative value was not fixed by the law, as in the case of his official return, but went to the jury like any other evidence. Suppose, instead of Rice, Van Antwerp, his assistant, or even one of the chainmen, had testified to precisely the same facts, could it be held that the official survey was so proved as to entitle it to the favorable pre-

sumption of the statute? We think such a conclusion would be unsafe, and not within the contemplation of the law. The official report of the county surveyor not being in evidence, nor his survey proved in the manner provided by statute, we do not think defendant was in position to claim the benefit of the instruction asked for, and there was no error in the refusal of the court to give it. Beeman v. Black, 49 Mich. 598, 14 N. W. Rep. 560. Tested by the same rule, instructions marked "2" and "3" were properly refused. If given they could not have helped the jury, for they would have found no evidence in the case to which such instructions could apply.

Error is also assigned on the refusal of the court to give instructions 4, 5, and 6, as follows: (4) Recognized government corners, standing in the same township, should be considered, and section lines tested by both east and west distances and north and south distances, as given by the field notes of the government surveyor. (5) The general rule, that known monuments are to govern, is subject to exceptions, as where an adherence to the rule would be plainly absurd to its results. (6) The rule that, in the construction of a deed, courses, distances, and quantities must yield to natural or artificial monuments called for by the grant, is not inflexible. It applies with less force to artificial than to natural monuments, and, where there is anything in the description showing that the courses and distances are right, they will prevail." We presume these instructions express correct rules of law for locating or establishing confessedly lost corners and boundary lines. In this case the primary issue was whether the government corner determining the boundary line between plaintiff and defendant was lost or not. The instruction as asked assumed the affirmative against the plaintiff. These instructions, admitting them to be good law in the abstract, could only have been properly given in this case upon the condition that the jury should first find that the original corner in question was lost, and this condition should have accompanied the instructions; for, as we will notice further on, if the corner established by the government surveyors, and in reference to which the patent was issued, is found and

definitely located, all inquiry as to its mathematical correctness is foreclosed; and so it was not error to refuse these instructions without the qualification suggested; for if the jury found with the plaintiff that the marks testified to by his witnesses were the marks of the government surveyor, and constituted the corner established by government survey, these instructions, however correct in a proper case, would have been inapplicable to this case.

We have read with considerable care the portions of the court's charge to which appellant excepts, and we discover no error. The charge was based upon the theory that there had been a survey of this land by the United States government, and that the patent to plaintiff was issued, and the land covered by it described with reference to such survey; that, if the jury believed from the evidence that the mound testified to by plaintiff's witnesses was the corner established by the government surveyors, it constituted the true corner, and so far determined the boundary line of plaintiff's land, without regard to whether such corner was located with mathematical exactness or not. We think this was a correct statement of the law, and was applicable to the case before the jury. "There can be no doubt that the definitely ascertained monument fixed by the government surveyors as the boundary between sections must govern," says DIXON, C. J., in Jones v. Kimble, 19 Wis. 452. If the stakes or monuments placed by the government in making the survey to indicate the section corners and quarter posts can be found, or the place where they originally were placed can be identified, they are to control in all cases." Hess v. Meyer, (Mich.) 41 N. W. Rep. 422; Britton v. Ferry, 14 Mich. 53; Knight v. Elliott, 57 Mo. 317.

We now go back to consider defendant's motion to dismiss the complaint, for the reason that at the time of the wrongful acts complained of the plaintiff was not in possession nor entitled to the possession of the *locus in quo*. Admitting, as claimed by appellant, that the common-law rule is that actual or constructive possession is necessary to support an action of trespass *quare clausum*, and that the tenant for a definite term,

at least, being in actual possession, the landlord has not such constructive possession as will entitle him to maintain such action, it still remains to be considered whether this is distinctively and necessarily an action only in the nature of trespass *quare clausum*, and so controlled by the foregoing rule. The old action of trespass *quare clausum fregit*, as its name imports, was based upon an alleged invasion of possession, and in such action could be litigated only the injury to the possession, and damages recovered only by the party in or entitled to the possession; but there still remained to the landlord out of possession the right to sue for permanent injury to the freehold, in an action on the case. The interesting question presented by this record, therefore, is not whether plaintiff, being a landlord out of possession, could have maintined an action of trespass *quare clausum*, but whether, on the facts alleged and proved, he can maintain any action. The effect of the reformed practice is substantially to make all law actions at least actions on the case. The true rule would seem to be that, wherever a legal right is violated, the owner of such right is the party entitled to action therefor. If possession only is disturbed, the owner of the right of possession may have his action for damages. If the freehold itself, independent of and beyond its present use and enjoyment by the tenant, is injured, the owner of the freehold ought in like manner to have his action. In his work on pleading, Chitty says: "Therefore a landlord cannot, during a subsisting lease, support trespass, but the action must be in the name of the tenant, or the landlord must proceed in case." In his commentaries (volume 4, p. 119,) Chancellor Kent says: "There has been some difficulty in this country as to the right of a landlord to bring trespass for an injury to the land while there was a tenant lawfully in possession;" and, after referring to cases says: "The suit is in case for trespass to the injury of the reversion, unless the lessee in possession be at will only, and then trespass will lie by the reversioner." Lienow v. Richie, 8 Pick. 235, was an action on the case by the owner of a house for cutting away a part of it while it was in the occupation of his tenant for a definite term. The court

says: "The facts found show a proper ground for an action on the case. The plaintiff not being in actual possession, nor having the right to possession against his lessee, could not maintain trespass. Case is the proper remedy for the landlord where an injury is done to the inheritance." See, also, Starr v. Jackson, 11 Mass. 519. Lachman v. Deisch, 71 Ill. 59, was an action "to recover damages for an injury to the plaintiff's real estate by the construction of a drain," the premises claimed to have been injured being in the actual possession of a tenant, and the court says: "The drain, as constructed, will permanently affect the rental value of the premises, and in such cases it is the settled law the owner may recover." These authorities all recognize the right of the landlord out of possession to maintain an action on the case for injury to his freehold or inheritance, and so in later cases, under the reform practice, the landlord's right of action, under like conditions, is definitely asserted. Bliss Code Pl. § 23. In Brown v. Bridges, 31 Iowa, 138, in which a dominent question was whether an action could be maintained by the landlord out of possession for an injury to his real estate in taking up and removing fences, the court, after referring to the rules of the common law applicable to different forms of action, concludes as follows: "We hold, therefore, that under the system of procedure recognized by the Code, the owner of real estate which is in the actual possession of a tenant may maintain an action for an injury to his estate." In Fitch v. Gosser, 54 Mo. 267, the trial court had held broadly "that the landlord cannot maintain an action of trespass for trespass committed on the premises while in the possession of his tenants." The supreme court reversed the judgment, saying: "At the common law an action by the owner of land for injuries to the inheritance when the land was rented to tenants was called an action on the case. The tenant could bring trespass for an injury to his possession. This suit, by whatever name it may be called, is for a damage sustained by the owner, and is therefore properly brought by him." The doctrine of these cases would seem to be the meaning of Section 2780, Comp. Laws: "A person having an estate in fee, in remainder, or reversion may

maintain an action for any injury done to the inheritance, notwithstanding an intervening estate for life or years, and although, after its commission, his estate is transferred, and he has no interest in the property at the commencement of the action.

Did the setting of a permanent fence across the land of plaintiff by defendant, thus cutting off a portion of plaintiff's farm, and attaching it to and inclosing it with defendant's farm under a claim of ownership by defendant, constitute a material and substantial injury to the freehold other and different and independent of the injury to the tenant's right of possession? We say a "permanent fence," because ordinarily fences are attached to and become part of the soil, and this particular fence was set for and designed as a line fence, marking the boundary between plaintiff's and defendant's land. In Taylor's Landlord & Tenant, p. 136, the law is stated generally as follows: "The landlord's rights, after the tenant's entry, are confined to the protection of his reversionary interest merely; that is, to the maintainance of actions for such injuries as would, in the ordinary course of things, continue to affect such interest after the determination of the lease." Cooley, Torts, p. 326: "An injury to real estate, while the tenancy exists, may support two actions,—one by the tenant, who, in any event, must suffer some legal injury; and one by the reversioner, when the injury is of a nature to affect the reversion." In Lienow v. Ritchie, *supra*, it was held that cutting away a part of a house was such an injury to the inheritance as justified a recovery of damages by the landlord out of possession. In Brown v. Bridges, *supra*, the removal of a fence was held to entitle the landlord to such action. And in numerous cases the flooding of lands, the cutting of timber, the demolition of buildings, and the discharge of rain water from an adjoining roof have supported actions for injury to the inheritance. Now, the same reasoning that would make the wrongful removal of a building or fence actionable would make its wrongful construction actionable. In each case the amount of damages would depend upon the degree of injury proved, but the principle upon which the right of action rested

would be the same in both cases. It could make no difference in principle whether the injury resulted from taking something off the land or from putting something on. Nor do we see why the injury to the freehold from the removal or the cutting off of improvements from a farm is so essentially different from that resulting from cutting off a part of the farm itself as to justify the distiction which would make one actionable and the other not. We think it would be against the most current ideas of right and justice to say that defendant might plant a fence across plaintiff's farm, thus segregating a portion of it, and making it openly, and under claim of absolute ownership, a part of his own farm, claiming the title, and holding dominion over it adversely to plaintiff, and still be entirely free from liability to the owner of the estate which he has thus chopped up with fences and clouded with a claim of ownership. There are many ways in which such acts might work an injury to plaintiff's estate distinct from their interference with the tenant's right of possession. It was an assertion of title, and an act of occupation under it, which, if plaintiff were incapacitated from resisting, would grow stronger day by day, until by force of prescription it would overcome plaintiff's title entirely. In Woods' edition of Addison on Torts, (volume 1, p. 213,) the following language is used: "An action is also maintainable by the reversioner of a mill demised to a tenant, for a diversion by a stranger of water from the millhead; for if the diversion was allowed to continue with the knowledge of the reversioner, and without interruption from him or his tenant, it might eventually be made the foundation of a legal right to divert the water, to the serious injury of the inheritance." Judge Cooley, speaking upon the same subject, and as to what acts will support action by the reversioner, says: "But if the act be one which, if persisted in, may at length ripen into an adverse right, an injury will be presumed." Cooley, Torts, p. 371; Blanchard v. Baker, 8 Greenl. 266. Appellant, however, insists that plaintiff could not recover for injury to her reversionary interest, because no such interest is alleged in the complaint, nor is any injury to the reversion complained of. When the com-

plaint states facts constituting an injury to the freehold endur-
ing and permanent, it states a cause of action in favor of the
owner of the freehold, whether in or out of possession. We
cannot perceive what advantage would be gained by requiring
the complaint to state formally and explicitly that the rever-
sion was injured, when the facts pleaded as the cause of action
are of such a nature as necessarily to work such injury. Bea-
ver v. Trimmer, 25 N. J. Law, 97; Tinsman v. Railroad Co.,
Id. 255. Two cases are cited by appellant as opposing this
view,—Uttendorffer v. Saegers, 50 Cal. 496, and Tobias v. Cohn,
36 N. Y. 363. In the former case the complaint alleged owner-
ship and possession in plaintiff of premises described, and of
the improvements thereon, consisting of buildings, fruit trees,
and grape vines; that defendant forcibly entered upon the prem-
ises, tore down the buildings, carried away the materials, and
dug up and carried away the grape vines. The opinion is very
short, and opens with the statement: "The action is trespass
*quare clausum;*" and then the court consistently reversed the
judgment below, because defendant was not allowed to show
that, at the time of the alleged injury, a tenant, and not plain-
tiff, was in the actual possession of the premises; but the opin-
ion concludes: "However, even if it could be considered as an
action brought by a reversioner for injury done to the freehold,
the duration of the term of the tenant in possession would be
important evidence as affecting the measure of damages to be
recovered,"—thus justifying the reversal to any who might not
be entirely satisfied with the first conclusion of the court.
Where a complaint shows a permanent and substantial injury
to the freehold itself for which the owner asks damages, we do
not quite see how a court can say that the action is for injury
to the possession merely, and so cannot be maintained by an
owner out of possession. The latter case, according to the
statement which precedes the opinion, was trespass for enter-
ing a yard or garden in the possession of the plaintiff, erecting
a fence across it, and depriving her of the use of more than
half the premises. The court held the action was for injury to
the possession, which was in a tenant, and not in plaintiff, and

says: "There could not be a recovery for injury to the inheritance, as there were no allegations in the complaint, either of the destruction of the fruit trees and shrubery, or of the reversionary interest of the plaintiff in the premises." In other words, that the complaint stated neither permanent injury to the freehold, nor any interest of plaintiff in such freehold, except the right of possession, and so did not show any cause of action except in the nature of trespass *quare clausum.* We hold that a substantial and permanent injury to the estate itself constitutes a cause of action in favor of the owner of the estate injured, and that a complaint showing such facts states a cause of action which will let in proof of such injury. The judgment of the circuit court is affirmed. All the judges concurring.