## STATE v. DONOVAN.

Since the police officers of a city could not suspend or interpret the statute requiring the closing of saloons on Sunday, in a prosecution for opening on Sunday, evidence was not admissible that the police officers permitted accused to enter his saloon on Sunday to keep up fires, to prevent freezing.

Under the statute requiring saloons to be closed on Sunday, a mere failure to keep a saloon closed on Sunday constitutes a crime; and, while the opening of a saloon on Sunday for some extraordinary cause, as in case of fire or the breaking of a water pipe, etc., would not constitute an offense, opening to keep up a fire in the saloon, in order that there might be a fire on Monday morning, and to pump air on the beer to prevent it from becoming stale and worthless, constituted an offense under the statute.

Requested instructions, not applicable · to the evidence, are properly refused, though abstractly correct.

Though it was error, in a prosecution for opening a saloon on Sunday, to charge that one cannot enter a saloon for any purpose on Sunday without committing an offense, such error was not prejudicial to accused, where the only issue was whether he was justified in entering to keep up a fire and pump air on the beer, and the court correctly charged that if he went into the saloon on Sunday for those purposes he was guilty; the erroneous instruction being merely academic.

In a prosecution for unlawfully keeping a saloon open on Sunday, the court charged that the statute requiring saloons to be closed on Sunday made no exceptions permitting entering them for any purpose, and that if the jury believed that accused was in his saloon on Sunday to fix the fire or pump air on the beer, as testified by him, the law does not authorize him to do so, and if they believed his evidence they should find him guilty, and "if you do not you can acquit him. If you believe his evidence, you are bound to convict him. It is up to you to say whether he is guilty or not." **Held** that, in view of the whole charge, the instructions that if the jury believed accused evidence it was "bound" to convict did not amount to the direction of a verdict; the word "bound" as used merely expressing a legal or moral obligation; and the jury being under such obligation to convict, if they believed accused's testimony that he entered his saloon for the purpose testified.

(Opinion filed, October 3, 1911.)

Appeal from Circuit Court, Lawrence County; Hon. W. G. RICE, Judge.

Michael J. Donovan was convicted of keeping his saloon open on Sunday, contrary to statute, and appeals. Affirmed.

*Stewart &Hodgson,* for appellant. *Royal C. Johnson, Atty. Gen.,* and *John T. Heffron, State's Atty.,* for the State.

HANEY, J. Having been convicted of the crime of not keeping his saloon closed on Sunday, the defendant brought the record of such conviction to this court for review by an appeal from the judgment of the circuit court imposing a fine of $100, and from its order denying defendant's application for a new trial.

[4] The state having offered evidence tending to prove that the defendant was the proprietor of a licensed saloon in the city of Deadwood, that he was in his saloon on Sunday, December 18, 1910, for "the space of one minute," that he walked towards the

stove with a coal scuttle in his hand, that no one else was there, that no one received any drinks, that defendant did not take a drink, cigar, or anything, that he had his coat and hat on while in his place of business, and rested, the defendant, as a witness on his own behalf, testified as follows: "On the 18th day of December, 1910, I was in my saloon long enough to pump up air on the beer and put a half scuttleful of coal in the stove. I had my hat and coat on. I did not sell any beer or liquor to any one. I went in the saloon to pump the air on the beer, because at 11 o'clock the night before we closed up, and when it runs over night it is necessary to pump the air, or the beer will be flat and absolutely worthless. I put a little coal on the fire, to have fire the next morning when we opened up. I was not in the saloon to exceed three minutes. I had no intention of violating the law, and did not take anything myself, or permit any one else to do so." Thereupon the witness was asked the following questions: "I will ask you if it is not a fact that on the 1st day of January, which was Sunday, you were notified by the police officers of the city of Deadwood that you would be permitted to go into your saloon for the purpose of keeping up the fires to prevent freezing and pecuniary loss?" The objection to this question was properly sustained. The police officers of Deadwood were not authorized to suspend the operation of the statute relating to the closing of saloons, or to determine its proper interpretation. If the defendant acted under the honest, though mistaken, belief that he could be protected by the police, the fact was one to be considered by the court in determining its sentence—a fact which might properly be urged in mitigation of punishment; but it constituted no defense in this action.

[2, 3] No other evidence having been received or offered, the following instructions, requested by the defendant, were refused: "(1) I charge you, gentlemen of the jury, that if you find the defendant was obliged, by reason of overruling necessity, to enter his place of business for a short period of time, not to exceed three minutes, you may find the defendant not guilty. (2) I charge you, gentlemen of the jury, that you are the sole judges of

whether or not the defendant was obliged, by reason of overruling necessity, to enter his place of business." The statute declares that all saloons "shall be closed on the first day of the week commonly called Sunday." It imposes upon the keeper of a saloon the affirmative duty of keeping it closed. The mere failure to perform this legal duty constitutes a crime. State v. Grant, 20 S. D. 164, 105 N. W. 97. "The offense consists in not keeping the saloon closed on Sunday, and it is not material whether or not any sale was made on that day, or as to the intent of the saloon keeper in not keeping it closed; nor is it material as to whether or not any person was seen to enter or depart from the saloon." State v. Schell, 22 S. D. 340, 117 N. W. 505. The object of the statute is to prevent any transaction connected with the business, in the room wherein the business is located, during the prohibited periods. The ease with which such a law may be evaded and its object defeated have inclined the courts to look with disfavor upon any excuse for the presence of the proprietor or other persons in the place at times when the business may not be lawfully conducted. Nevertheless, every statute should receive a sensible construction. "Interpretation must be reasonable." Rev. Civ. Code, § 2441. Undoubtedly occasions may arise, as in case of fire, the breaking of a water pipe, or other unusual circumstance, not incidental to or connected with the conduct of the business, when it would be absurd to hold that no one could enter the place without rendering the proprietor guilty of a crime. Obvious as this may be, an accurate, exhaustive definition of what constitutes such an occasion would be difficult. The phrase "overruling necessity" (People v. Tolman, 148 Mich. 305, 11 N. W. 772) is too vague to be of value. There is nothing in State v. Grant, supra, which affects the question under discussion, or aids in its solution. That was a case where the saloon was opened by a person, other than the proprietor, for the purpose of selling liquor, and his responsibility for the acts of such other person was being considered. This is one where the proprietor himself entered the place; the vital question being whether his presence therein, for the purposes disclosed by the evidence, constituted a violation of the law. Assuming that the defendant's testimony

was true, it being consistent with that introduced by the state, he was in his place of business, alone, for two purposes only—to put coal on the fire, that there might be a fire in the stove the next morning, and to pump air on the beer. Replenishing the fire with coal to avoid the inconvenience of starting it anew on the following morning clearly did not justify the defendant's presence. The pumping of air on the beer to prevent it from becoming flat and valueless was a transaction incidental to the business. If the saloon business cannot be conducted without pumping air on the beer every day, the statute should be amended, or the business abandoned. The Legislature, having power to prohibit the business, has provided that nothing connected therewith shall be done on certain days and during certain hours; that the business, with all its incidents, shall be suspended during the prohibited periods. Clearly, then, the opening of his saloon by the defendant, for the purposes disclosed by his own uncontradicted testimony, was a violation of the law. There being no dispute as to the facts, and such facts showing affirmatively defendant's reasons for not having kept his place closed, no question of "overruling necessity" was involved, and the court did not err in refusing to give the requested instructions. Instructions not applicable to the evidence, though good law, are properly refused. Arneson v. Spawn, 2 S. D. 269, 49 N. W. 1966, 39 Am. St. Rep. 783.

[4] Exceptions are taken to the following instructions given by the court on its own motion: "The statutes of this state provide that men may engage in the saloon business, and then the statutes provide rules and regulations under which they can enter and conduct it; and one of the provisions is that the saloon must remain closed on the first day of the week, commonly known as Sunday, and the statutes nowhere make any excepting or make any provisions whereby any one can go in a saloon on Sunday, for any purpose whatever. If you believe the evidence of the defendant, Mr. Donovan, in this case, you will find him guilty; if you do not believe him, you can acquit him. The law makes no provision or any exception as to entering a saloon on the first day of the week, and that is the question here; so if you believe Mr. Donovan .

was in the saloon on Sunday, to pump up the beer or fix up the fire, the law does not authorize him to do it. If you believe his evidence, you will find him guilty, and if you do not you can acquit him. If you believe his evidence, you are bound to convict him. It is up to you to say whether he is guilty or not. If you find him guilty, your verdict will in substance be: 'We, the jury, find the defendant guilty.' If you don't believe his testimony, and find him not guilty, your verdict will in substance be: 'We, the jury, find the defendant not quilty.'" It is contended the court erred in stating that the statutes nowhere make any exceptions or provisions, whereby any one can go into a saloon on Sunday, for any purpose whatever. In one sense the statement is strictly accurate. The statutes contain no express exceptions. However, as an abstract view of the law relating to the crime charged, the trial court was in error, if it should be understood as holding that no person can enter a saloon on Sunday, for any purpose, without rendering the proprietor guilty of a crime. But all its statements relating to the provisions of the statute were purely academic, and might better have been omitted. The issue was not whether any occasion might arise which would justify the presence of any person in a saloon on Sunday. It was whether the presence of this proprietor, for the purposes shown by this evidence, was justifiable. On this issue the court charged correctly, when it said, if the defendant "was in the saloon on Sunday to pump up the beer or fix up the fire," he was guilty of the crime charged; the opening of the saloon for either purpose being unauthorized by the law. Having correctly stated the rule of law applicable to the pleadings and evidence in this action, the fact that the court may have assigned an erroneous reason for the rule could not possibly have prejudiced any substantial right of the defendant.

[5] It is further contended that the charge was erroneous for the reason that the clause, "if you believe his evidence you are *bound* to convict him," was in effect a direction to return a verdict of guilty. It certainly would have been better to have instructed the jury that, if they were satisfied from all the evidence, beyond a reasonable doubt, that the defendant was in his saloon on

the day. alleged "to pump up the beer or fix up the fire," they should find him guilty; if not so satisfied, they should find him not guilty. But such, in substance, was the instruction given. If the jury believed the defendant's testimony, they necessarily believed the existence of the facts constituting the crime charged. The word "bound," as used in the instruction, merely expressed a legal or moral obligation. Web. New Int. Dict. If the jury believed that the defendant entered his saloon on Sunday for either of the purposes disclosed by his testimony, they were under both a legal and a moral obligation to find him guilty. Moreover, the court expressly charged the jury that they might either convict or acquit. It said: "It is up to you to say whether he is guilty or not." Taken as a whole, the charge did not amount to a direction of the verdict.

The judgment is affirmed.